Sam ANDERSON, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 85–1551.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1985.

Decided April 14, 1986.

Jack Lassiter, Little Rock, Ark., for appellant.

W. Asa Hutchinson, Fort Smith, Ark., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and REGAN,* Senior District Judge.

WOLLMAN, Circuit Judge.

Sam Anderson, Jr. appeals from a judgment of conviction entered February 28, 1985, following a jury trial at which he was found guilty of two counts of conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (1982) and of one count of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). We remand to the district court for further proceedings.

Anderson was originally charged with four counts (the fourth was dismissed before trial upon the government's motion). Count I charged Anderson with conspiring with Roger Clinton to distribute cocaine from November 1983 through February 1984. Count II charged Anderson with conspiring with Maurice Rodriguez to distribute cocaine from May 1984 through June 1984. Count III charged Anderson with distributing a gram of cocaine to Clinton for Rodney Meyers, an Arkansas State Police informant, on June 20, 1984. Clinton and Rodriguez were separately indicted and pleaded guilty to similar charges.

* The HONORABLE JOHN K. REGAN, United States Senior District Judge for the Eastern Dis-

## I.

Anderson claims prejudicial error in the district court's refusal to allow a proffer at the pretrial hearing of the testimony of state police officers to show the materiality of statements made by Clinton, who was a key government witness in Anderson's trial. Clinton testified that approximately seventy-five percent of the cocaine he received from Rodriguez from November 1982 through February 1984 was delivered to Anderson, and that he obtained one gram of cocaine from Anderson that he sold to Meyers on June 20, 1984. The government refused to produce state police investigation tapes of conversations involving Clinton because they were voluminous and purportedly unrelated to Anderson's case. The government also refused to produce statements made by Clinton during a polygraph examination on the ground that they were not discoverable. Despite specific requests for these alleged exculpatory or Jencks Act statements, Anderson was not granted access to the tapes or the polygraph statements. The district court held that since Anderson had not yet shown materiality, he could not make the proffer. Furthermore, the district court denied Anderson's request for an *in camera* review of the Clinton tapes.

In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." The Court defined materiality in *United States v. Bagley,* —— U.S. ——, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985):

The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is

trict of Missouri.

a probability sufficient to undermine confidence in the outcome.

*See also United States v. Agurs,* 427 U.S. 97, 113–14, 96 S.Ct. 2392, 2402–03, 49 L.Ed.2d 342 (1976). This definition of materiality applies to all cases of prosecutorial failure to disclose favorable evidence whether there was "no request," a "general request," or a "specific request," on the part of the defendant. *Bagley,* 105 S.Ct. at 3384. Similarly, there is no constitutional distinction between impeachment and exculpatory evidence. *Id.* at 3381.

■ Whether the statements were material to Anderson's guilt or punishment is a question that the district court should have determined by reviewing the tapes and the polygraph statements *in camera. United States v. Griggs,* 713 F.2d 672, 674 (11th Cir.1983); *United States v. Peters,* 625 F.2d 366, 371 (10th Cir.1980); *United States v. Brown,* 574 F.2d 1274, 1278 (5th Cir.1978). *But see United States v. Strahl,* 590 F.2d 10, 15 (1st Cir.1978), *cert. denied* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979).

■ The Jencks Act, 18 U.S.C. § 3500, requires the government to provide the defendant upon motion any statement or report made by a government witness which relates to the subject matter of the witness' direct testimony. 18 U.S.C. § 3500(a) and (b). The government is not required to produce such statement or report until after the witness has testified on direct examination. 18 U.S.C. § 3500(a). The Act defines "statement" as:

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury. 18 U.S.C. § 3500(e).

■ Whether a statement meets the statutory definition is a question of fact to be determined by the district court. *Canaday v. United States,* 354 F.2d 849, 858 (8th Cir.1966). The district court could have fulfilled its responsibility by hearing extrinsic evidence or by *in camera* review. *Canaday,* 354 F.2d at 859. In *Campbell v. United States,* 365 U.S. 85, 95, 81 S.Ct. 421, 426–27, 5 L.Ed.2d 428 (1961), the Supreme Court stated:

The statute says nothing of burdens of producing evidence. Rather it implies the duty in the trial judge affirmatively to administer the statute in such a way as can best secure relevant and available evidence necessary to decide between the directly opposed interests protected by the statute—safeguarding government papers from disclosure, and the interest of the accused in having the government produce "statements" which the statute requires to be produced.

■ Our review of the record discloses that the district court did not fully discharge the duty imposed upon it by *Brady* and § 3500. Accordingly, we remand with directions that the district court review *in camera* the Clinton tapes and the statements made by Clinton during the polygraph examination.[1] After conducting such review, the district court should determine whether any of this evidence is exculpatory or meets the Jencks Act definition of a statement and enter findings accordingly. If the district court finds that the statements were exculpatory or would have been helpful in Anderson's cross-examination of Clinton, it must then determine whether the material contained in the tapes

---

**1.** In so holding, we do not recede from the rule that polygraph examination results should not be admitted absent stipulation, *United States v. Gordon,* 688 F.2d 42, 44 (8th Cir.1982); *United States v. Alexander,* 526 F.2d 161, 166 (8th Cir.

1975). The results of the polygraph examination would not be *Jencks* material, but the statements that Clinton made during the examination may be, depending upon the district court's findings.

met the materiality test set forth in *Bagley* and enter appropriate findings on this issue. The district court is directed to certify these supplementary findings to us for our review.

## II.

■ Anderson claims prejudicial error in the district court's refusal to allow him to introduce a video tape of a June 27, 1985, conversation between Clinton, Meyers, and an undercover state police officer unless he could first expunge the expletives contained in the recorded conversation. Since Anderson could not completely edit the expletives, his counsel read portions of the transcript of the conversation from which the expletives had been deleted.

Anderson argues on appeal that he was not able to properly impeach Clinton without the use of the video tape in that the video tape portrayed Clinton as apparently under the influence of drugs as he "chopped" cocaine on a tray. On cross-examination, Clinton admitted that he had lied to the district court when he stated at the time of his guilty plea that he was free of cocaine. Moreover, Clinton conceded on cross-examination that cocaine confuses people.

Anderson cites *United States v. McMillan*, 508 F.2d 101 (8th Cir.1974), where the court noted that the tape of a conversation is the best evidence of the conversation and that normally the transcript of the tape should be used only to assist the jury as it listens to the tape. In *McMillan*, the prosecution was permitted over defendant's objection to read the transcript of each tape aloud to the jury after the tape was played. In affirming the district court's decision, the court noted that "[t]ranscripts should not ordinarily be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence." *Id.* at 106. Here, Anderson does not dispute the accuracy of the transcript. The tape itself was not admissible because of Anderson's failure to comply with the trial court's condition, reasonable under the circumstances, that the objectionable language be elided.

■ The decision whether to admit evidence is within the broad discretion of the district court and will not be overturned absent a clear abuse of discretion. *Williams v. Butler*, 746 F.2d 431, 440 (8th Cir.1984); *United States v. Henneberry*, 719 F.2d 941, 948 (8th Cir.1983); *United States v. Gordon*, 688 F.2d 42, 44 (8th Cir.1982). The district court was obviously concerned about offending the jury with the extraneous language. We conclude that the district court did not abuse its discretion in refusing to admit the video tape into evidence. Moreover, in the light of Clinton's testimony on cross-examination, it is clear that Anderson was successful in impeaching Clinton and was not materially prejudiced by the district court's ruling.

## III.

Although the government contends that Count II is unaffected by Anderson's claims of error, we will defer our ruling on that count until our review of the district court's supplemental findings.

We remand the case to the district court for further proceedings in accordance with the directions set forth above. This court retains jurisdiction for the purpose of reviewing the district court's further findings when they have been made and certified to us in accordance with part I of this opinion.