UNITED STATES of America, Appellee,

v.

Edward David BATISTA,
Defendant, Appellant.

No. 87–1362.

United States Court of Appeals,
First Circuit.

Submitted Sept. 30, 1987.

Decided Nov. 17, 1987.

Willie J. Davis, Boston, Mass., with whom Davis and Robinson, Boston, Mass., was on brief, for defendant, appellant.

Jonathan Chiel, Asst. U.S. Atty., Boston, Mass., with whom Frank L. McNamara, Jr., Acting U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, and TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

TIMBERS, Senior Circuit Judge.

Edward David Batista ("appellant") appeals from a judgment of conviction entered March 31, 1987 in the District of Massachusetts, Andrew A. Caffrey, *Senior District Judge*, upon a jury verdict of guilty on a charge of possessing with intent to distribute more than one kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1982). The appeal brings up for review the district court's pretrial order of December 23, 1986, denying appellant's motion to dismiss the indictment. 652 F.Supp. 942 (D.Mass.1986).

On appeal, appellant argues, first, that his Sixth Amendment right to counsel was abridged when federal agents of the Drug Enforcement Administration ("DEA") used him as an informant without the prior consent of his counsel; second, that we should exercise our supervisory powers and dismiss the indictment; third, that the district court committed reversible error when it permitted the prosecutor to ask appellant on cross-examination to comment on the credibility of other witnesses; and, fourth, that the district court committed reversible error when it refused to instruct the jury on appellant's state of mind.

We hold that appellant's Sixth Amendment right to counsel, which had attached only with regard to an entirely separate offense, did not protect him from investigations by federal agents on a later unrelated crime. We also hold that the actions of the federal agents do not warrant the exercise of our supervisory powers. We further hold that the district court did not commit reversible error in permitting the prosecutor to question appellant on the credibility

of other witnesses. Finally, we hold that the court's jury instructions were proper.

We affirm.

I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

In April 1985, the Suffolk County District Attorney caused appellant to be arrested and to be indicted by a grand jury on charges of possessing and trafficking in cocaine. Appellant's counsel, Willie J. Davis ("Davis"), met with Detective George Foley ("Foley") and other members of the Boston Police Department and arranged to have appellant cooperate with the local authorities. Davis also met with William Walsh ("Walsh"), a Suffolk County Assistant District Attorney, to negotiate a plea bargain. After appellant's cooperation resulted in the arrest of seven people and the seizure of several pounds of cocaine, the Boston Police recommended to Walsh that appellant receive a suspended sentence. Walsh instead stated that, while he would drop the trafficking charge, he would press for a five year state prison sentence on the possession charge.

Foley then introduced appellant to several DEA agents, including Special Agent Joseph Ritucci ("Ritucci"). They discussed the possibility that appellant's further cooperation with federal agents might cause the Suffolk County District Attorney's Office to recommend a reduced sentence. Davis advised appellant against further cooperation. After several more meetings it became clear to Foley, Davis and appellant that the District Attorney's Office would maintain its position despite any further cooperation by appellant. Nevertheless, and despite Foley's reiteration of his belief that appellant would gain nothing by cooperating, appellant continued to provide information to and cooperation with the federal authorities.

In August 1986, appellant provided information to Ritucci about a New York cocaine dealer named Felix Ulloa ("Ulloa").

* Of the Second Circuit, sitting by designation.

The DEA decided to finance an undercover operation (the "Ulloa operation"), in which Ulloa would meet with appellant and Jaime Cepero ("Cepero"), a Massachusetts state trooper who would pose as a buyer. Under this plan, Ulloa would sell Cepero ten kilograms of cocaine at $30,000 per kilogram.

On September 3, 1986, appellant and Cepero were supposed to meet with Ulloa to find a suitable hotel at which to consummate the sale. Appellant, however, failed to meet first with Cepero. Instead he went directly to meet with Ulloa. Having spent time searching for appellant, Cepero was late for the meeting with Ulloa. Appellant left with Ulloa and appellant's cousin before Cepero arrived. Ulloa and appellant chose a Holiday Inn as the location for the sale.

On September 5, 1986, the scheduled day of the sale, the DEA found that it was unable to book a sufficient number of rooms at the Holiday Inn. It therefore booked rooms at the Marriott Hotel in Burlington. The DEA instructed appellant not to advise Ulloa of the change until he met Ulloa at the Holiday Inn. Appellant was upset at this change and told Cepero that he believed his life would be in danger. Cepero offered to accompany appellant to the meeting with Ulloa and told appellant that he would be under surveillance. Appellant, however, declined Cepero's offer to accompany him and repeatedly requested that he be allowed to arrive with Ulloa at the Marriott without any DEA surveillance. Appellant explained that he was afraid Ulloa would detect the surveillance. Later, appellant indicated reluctance to complete the deal. He said he was fearful that the federal agents would arrest him. The DEA agents assured appellant that they would only pretend to arrest him and Cepero for the benefit of Ulloa.

The sale was to take place at midnight on September 5. At 9:00 p.m., appellant met with Special Agent Ritucci and Benny Mangor ("Mangor"), another DEA agent. Appellant again requested that he and Ulloa be allowed to arrive at the Marriott without surveillance. After inquiry from Mangor, appellant acknowledged that he had made independent contact with Ulloa and had arranged to meet at either the hotel or a gas station, at Ulloa's discretion. Appellant told the agents that Ulloa would contact him shortly at a pay telephone.

Ulloa chose the gas station. Appellant, after requesting no surveillance, drove there to meet Ulloa. The DEA agents in fact followed appellant and saw him meet with Ulloa and a woman later identified as Ana Narvaez ("Narvaez"). As arranged, they then went to the hotel room where Ulloa produced ten kilograms of cocaine. Ulloa and Narvaez were arrested immediately. About fifteen minutes later, Mangor told appellant that he was going to search his car. Appellant then admitted that he had an extra ten kilograms of cocaine in his car. Mangor arrested appellant and found the cocaine in the car. Appellant said that Ulloa had surprised him by bringing the additional ten kilograms. He said that Ulloa intended to sell this additional cocaine to appellant's cousin.

On September 23, 1986, a federal grand jury indicted appellant for possessing with intent to distribute more than one kilogram of cocaine in violation of 21 U.S.C. § 841(a)(1) (1982). Appellant moved to dismiss the indictment on the ground that the DEA had violated his Sixth Amendment right to counsel. After a hearing on November 5, 1986, the court denied the motion on December 23, 1986, as stated above. On February 12, 1987, after a jury trial, appellant was found guilty. He was sentenced to twelve years in prison. This appeal followed.

For the reasons stated below, we affirm the judgment of conviction.

## II.

In *Kirby v. Illinois*, 406 U.S. 682 (1972), the Supreme Court held that, while an accused has a right to assistance of counsel under *United States v. Wade*, 388 U.S. 218 (1967), at any "critical stage" of a prosecution against him, that right does not attach until the government has initiated judicial criminal proceedings, such as a "formal charge, preliminary hearing, indictment, information, or arraignment."

*Kirby, supra,* 406 U.S. at 689. The Court explained the rationale for this holding as follows:

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."

*Id.* The Court later held that the Sixth Amendment, by its very terms, "becomes applicable only when the government's role shifts from investigation to accusation." *Moran v. Burbine,* 475 U.S. 412, 430 (1986).

Appellant argues that the DEA agents should have obtained the approval of Davis, his counsel, before allowing appellant to participate in the undercover operation. He contends that their failure to do so—especially when they knew that he had been represented by counsel and that his counsel had advised appellant against further cooperation with the authorities—interfered with appellant's right to counsel. Appellant acknowledges that under *Kirby, supra,* the right to counsel does not attach until the government has initiated formal proceedings. He also recognizes that no formal proceedings on the federal charges had been initiated against him at the time in question. He argues, however, that, since he had been indicted earlier on the state charges, his right to counsel attached then with respect to the *state* charges. He then advances what we regard as the untenable further argument that, since the *federal* crime for which he was convicted arose out of what he characterizes as a joint state-federal operation, his right to counsel also attached with regard to the federal charges as of the moment he was indicted on the *state* charges.

In the instant case, however, the facts show two separate "judicial criminal proceedings". They do not truly overlap as appellant asserts. By the time appellant had become involved with the Ulloa operation, he was fully aware that the District Attorney in the state case was not going to change his position and therefore that the plea negotiations and the "accusation" phase of that prosecution were completed. The "critical stage" of the state case thus had passed by the time of the Ulloa operation. Moreover, the "critical stage" of the federal case did not begin until well after the end of the Ulloa operation when appellant was indicted on September 23, 1986.

Indeed, while it was held in *Moran, supra,* that the Sixth Amendment will not apply until the government's "role shifts from investigation to accusation," 475 U.S. at 430, here, the government was not even in an "investigation" posture with respect to appellant; rather, it was investigating Ulloa.

Moreover, to hold that a defendant's right to counsel for one crime creates a right to counsel for the prosecution of any other crime committed after indictment on the first crime would be essentially to immunize a defendant from further prosecution. On the question of whether statements "deliberately elicited" in the absence of counsel are admissible in view of the Sixth Amendment, the Supreme Court has stated that, even after the right to counsel has attached with regard to one crime, the government may investigate a defendant without counsel on "other crimes, as to which the Sixth Amendment right has not yet attached." *Maine v. Moulton,* 474 U.S. 159, 180 n. 16 (1985) (dictum). Furthermore, we have held that the government can introduce a "defendant's statements relating to a separate crime when obtained in the good faith investigation" of that crime. *United States v. DeWolf,* 696 F.2d 1, 3 (1st Cir.1982). Thus, even if the "critical stage" of the state case had not passed by the time of the Ulloa operation, appellant still was not entitled to counsel on the separate offense regarding the other ten kilograms of cocaine.

The district court was correct in concluding that appellant's right to counsel with

regard to the federal charge had not attached prior to his indictment on the federal charge. We hold that appellant's Sixth Amendment right to counsel, which had attached only with regard to an entirely separate state offense, did not require the presence of counsel during the investigation by federal agents of a later unrelated federal offense.

In short, we reject appellant's claims on this aspect of his appeal substantially for the reasons set forth in Judge Caffrey's excellent district court opinion. 652 F.Supp. 942 (D.Mass.1986).

### III.

■ Citing *McNabb v. United States*, 318 U.S. 332, 341 (1943), the Supreme Court has held that the federal courts, "in the exercise of supervisory powers, ... may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress." *United States v. Hastings*, 461 U.S. 499, 505 (1983). In *Hastings*, the Court described the three purposes of these supervisory powers as: (1) implementing a remedy for the violation of recognized rights; (2) preserving judicial integrity "by ensuring that a conviction rests on appropriate considerations validly before the jury"; and (3) implementing a remedy to deter illegal conduct. *Id.*

Focusing on the third purpose, appellant contends that we, in our discretion, should exercise our power and dismiss the indictment even if the right to counsel had not attached regarding the federal crime with which appellant was charged. Appellant contends that, irrespective of the Sixth Amendment right to counsel, the actions of the DEA agents were fundamentally unfair—in using appellant as an informant when they allegedly knew his counsel had advised strongly against it, thereby undermining the attorney-client relationship.

We exercise our supervisory powers " 'sparingly,' " and we are " 'reluctant to exercise them to overturn a conviction that was not the *product* of manifestly improper conduct by federal officials.' " *United States v. Babb*, 807 F.2d 272, 279 (1st Cir. 1986) (quoting *United States v. Lieber-*

*man*, 608 F.2d 889, 899 (1st Cir.1979), *cert. denied*, 444 U.S. 1019 (1980)) (emphasis in original). In *Hastings, supra*, 461 U.S. at 506, moreover, the Supreme Court held that supervisory powers are not to be used if the alleged error was harmless. We will dismiss an indictment only in "egregious circumstances where 'conduct' has clearly crossed over into the realm of 'misconduct.' " *United States v. Houghton*, 554 F.2d 1219, 1224 (1st Cir.1977).

We believe that it would be inappropriate to exercise our supervisory powers in this case. Assuming arguendo that the DEA agents acted unfairly in allowing appellant to act in an undercover capacity (we emphatically do not believe they did), appellant has failed to show that this alleged unfairness produced his indictment and subsequent prosecution. On the contrary, the indictment was the product of appellant's independent act of accepting an additional ten kilograms of cocaine from Ulloa. Moreover, the actions of the DEA agents do not strike us as unfair. They certainly were not an instance of "egregious circumstances." The agents repeatedly advised appellant to consult with his counsel throughout the undercover operation up until the night of the deal with Ulloa. It was appellant, moreover, who, after he learned that he had nothing to gain from further cooperation, continued to provide information to the DEA and initiated the Ulloa operation.

We hold that the actions of the federal agents do not warrant the exercise of our supervisory powers.

### IV.

■ We turn next to the claim regarding the prosecutor's questioning appellant about the credibility of other witnesses.

During the trial, the prosecutor asked appellant on cross-examination whether a government witness had previously lied on the stand. The court sustained Davis' objection to this question. Later, the prosecutor asked appellant whether another witness had been "wrong" in his testimony and appellant answered that he "was ly-

ing". Davis then objected, but the court allowed the prosecutor to continue asking whether several witnesses were lying. Appellant now claims that the court's failure to sustain the second objection warrants reversal of his conviction.

True, it is primarily the responsibility of the jury to evaluate the credibility of witnesses. *United States v. Barrett*, 539 F.2d 244, 254 (1st Cir.1976). Courts have considered questions requiring one witness to comment on the credibility of another witness to be improper. *See, e.g., United States v. Narciso*, 446 F.Supp. 252, 321 (E.D.Mich.1977). We surely do not approve such practice.

In the few cases in point, however, courts have found reversal warranted only when the objectionable questions were asked repeatedly and the record as a whole was rife with error. *See, e.g., id.* at 326–27. In the instant case, by contrast, the objectionable line of questioning was an isolated instance in a trial otherwise free of error. Moreover, the court in its charge reminded the jurors that, while "[e]ach witness who has testified has sworn to tell you the truth", the question of "whether any particular witness has done so is for you to decide."

In any event, in light of the strong evidence of appellant's guilt, "the likely impact of [any] error on the minds of the jurors," *United States v. Mazza*, 792 F.2d 1210, 1216 (1st Cir.1986), was limited. We can therefore say " 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the [jurors'] judgment was not substantially swayed by the error.' " *Id.* at 1216–17 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

We hold that the court did not commit reversible error in permitting the prosecutor to question appellant on the credibility of other witnesses.

### V.

This brings us to appellant's claim that the court should have instructed the jury on appellant's state of mind as an informant. He asserts that such an in-

struction would have allowed the jury to consider his defense that he was surprised when Ulloa placed the extra ten kilograms of cocaine in the car and that he therefore never intended to possess the cocaine.

We may reverse a conviction because of the failure of a court to give a particular requested charge only if the charge (1) was substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerned "an important point" in the trial so that failure to give it impaired the defendant's ability to present a defense. *United States v. Gibson*, 726 F.2d 869, 874 (1st Cir.), *cert. denied*, 466 U.S. 960 (1984). In the instant case, the requested charge complies with none of these requirements.

First, the requested charge was not "substantively correct", because it did not actually relate to appellant's defense and thus would have confused the jury. While the requested charge related to the issues of the distinction between actual and constructive possession and the propriety of inferring state of mind from circumstantial evidence, appellant's defense turned on his assertion that he never intended to possess the cocaine. Second, the court "substantially covered" the requested charge when it instructed the jury to consider the statements and acts of appellant or any other circumstance in determining his state of mind, and to make sure that they were convinced beyond a reasonable doubt that appellant acted willfully and knowingly. Finally, as indicated above, the proposed charge did not truly relate to appellant's "surprise" defense. Failure to give the charge did not impair appellant's ability to present his defense.

We hold that the court's jury instructions were proper.

### VI.

To summarize:

We affirm the judgment of conviction for possession of cocaine with intent to distribute. We hold that appellant's Sixth Amendment right to counsel, which had attached only with regard to an entirely

separate state offense, did not protect him from the investigation by federal agents of a later unrelated crime. We also hold that the actions of the federal agents do not warrant the exercise of our supervisory powers. We further hold that the court did not commit reversible error in permitting the prosecutor to question appellant on the credibility of other witnesses. Finally, we hold that the court's jury instructions were proper.

Affirmed.