UNITED STATES of America, Appellee,

v.

Michael BRITT, Appellant.

No. 89–2719.

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1990.

Decided Oct. 10, 1990.

Mark C. Meyer, Cedar Rapids, Iowa, for appellant.

Richard L. Murphy, Cedar Rapids, Iowa, for appellee.

Before ARNOLD, BOWMAN and WOLLMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Michael Britt appeals from the order of the District Court[1] vacating his guilty plea. The government moved before sentencing to vacate Britt's guilty plea after learning that Britt had not complied with the terms of the plea agreement pursuant to which he pled. Specifically, the government alleged that Britt did not disclose the full extent of his drug dealings, plotted with codefendants to conceal drug trafficking activity, and testified untruthfully at the trial of his codefendant Daniel Stevens. After an evidentiary hearing, the District Court, concluding that Britt had materially breached his plea agreement, granted the government's motion to set aside Britt's guilty plea. On appeal, Britt argues: (1) setting aside his guilty plea and charging him with a more serious drug crime violated the Double Jeopardy Clause and principles of contract law applicable to plea agreements; and (2) the District Court relied on improper and unconstitutionally obtained evidence in its decision.[2] We affirm.

I.

Britt was arrested on December 12, 1987, while attempting to purchase 150 to 300 pounds of marijuana from a cooperating government informant. He negotiated a plea agreement in which he agreed to plead guilty to one count of conspiracy to distribute and possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988). In return for the government's promise to file no additional Title 21 criminal charges, Britt pledged to "fully and completely cooperate with the United States in its investigation into the use, possession, and trafficking of controlled substances and related criminal activity within the Northern District of Iowa and elsewhere." Appellant's Appendix at A–1 (Initial Plea Agreement at ¶ 2). Britt also agreed to forfeit all property gained through or associated with drug trafficking. *Id.* at A–3 (Initial Plea Agreement at ¶ 6). The agreement was signed by the parties and their counsel on January 6, 1988, and Britt entered his guilty plea on November 8, 1988.

Over the course of the year, Britt had several debriefing meetings with federal agents, made recorded phone conversations to other suspected drug traffickers, participated in at least one controlled buy in which his seller was arrested, and testified at the trial of Daniel Stevens. In his interviews with law enforcement agents, Britt repeatedly denied any involvement in a marijuana transaction in Grand Junction, Colorado, a location mentioned by Britt in a tape-recorded conversation made during the attempted sale leading to his arrest. Britt denied having any marijuana dealings with Chris Batten and denied any knowledge of Batten's marijuana trafficking. Britt repeatedly maintained that the December 12, 1987 transaction was his only marijuana transaction with Stevens and denied any knowledge of marijuana traffick-

---

1. The Honorable Edward J. McManus, United States Senior District Judge for Northern District of Iowa.

2. Britt also argues that because the Federal Rules of Criminal Procedure have no specific provision authorizing a district court to grant the government's motion to vacate a defendant's guilty plea, the District Court did not have the power to vacate Britt's guilty plea. We disagree and believe the District Court's action fell well within its inherent power to protect the integrity of the judicial process.

ing by individuals in the state of Mississippi. At Stevens' trial, Britt testified truthfully regarding Stevens' involvement in the December 12 transaction but did not reveal his knowledge of Stevens' previous marijuana dealings.

On November 22, 1988, Britt was interviewed by an agent of the federal Drug Enforcement Administration (DEA) as part of an independent investigation conducted by the DEA. In that interview, Britt admitted for the first time extensive involvement with several other suspected drug traffickers in Mississippi and Louisiana. Britt made these admissions only after the agent told Britt that another drug dealer had provided the DEA with information concerning Britt's dealings in Mississippi. On December 12, 1988, Stevens, who was convicted at trial, contacted law enforcement agents and told them that Britt had perjured himself at Stevens' trial and had repeatedly lied to investigators. Specifically, Stevens stated: (1) Britt and Batten were involved in extensive marijuana dealings; (2) Britt received marijuana from a source in Louisiana and one in the country of Belize; (3) Britt was involved in a marijuana transaction in Grand Junction, Colorado; and (4) contrary to his claims, Britt knew an individual named Frank Conrad, a suspected marijuana dealer. Stevens told the agents that he and Britt met on several occasions after their initial arrest and agreed to conceal the extent of their drug dealings. Britt gave Stevens a substantial amount of cash to use to hire an attorney with the implied understanding that in return Stevens would remain quiet.

On December 13, 1988, Britt submitted to a polygraph examination at the government's request. In the opinion of the examiner, Britt failed to respond truthfully to questions regarding his drug dealings with Stevens and Batten and the forfeiture of assets. In the interview following the examination, Britt admitted that he might have withheld certain assets but steadfastly maintained that he had been completely truthful regarding his marijuana dealings

with Stevens and Batten. On January 12, 1989, Stevens wore a body recorder to Britt's home and recorded Britt bragging that he had perjured himself at Stevens' trial and had lied to the agents. Britt continued to implore Stevens to conceal the Colorado marijuana transaction.

On December 29, 1988, the government informed Britt that it considered him to have violated his plea agreement and intended to seek additional or alternate charges against him. The government moved to vacate Britt's plea and, after an evidentiary hearing in June 1989, the District Court found that Britt had materially breached his plea agreement and granted the government's motion to vacate his guilty plea. The government then filed a second information against Britt charging him with the same count of conspiracy to distribute marijuana as before but this time alleging that the quantity of drug involved was more than fifty kilograms. This changed the maximum penalty to which Britt was subject from five years to between 210 and 262 months in prison. Britt entered a conditional plea of guilty on this count reserving his right to appeal the vacating of his first guilty plea to this Court.

## II.

We are presented with the question of whether a defendant's failure after his guilty plea is entered to fulfill his obligations under his plea agreement releases the government from its bargain and entitles it to bring additional charges against the defendant. Britt argues that setting aside his guilty plea and allowing the government to file a more severe drug charge against him violated the Double Jeopardy Clause.[3] We conclude that in these circumstances the Double Jeopardy Clause does not bar the setting aside of Britt's guilty plea and the filing of a more serious drug charge against him.

Several federal courts of appeals have approved the setting aside of plea agree-

---

**3.** We assume for purposes of this discussion that jeopardy attached when Britt's guilty plea was accepted by the court. *See United States v.*

*Bullock,* 579 F.2d 1116, 1118 (8th Cir.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978).

ments and guilty pleas in circumstances similar to those in this case with no suggestion that such action implicates a defendant's right not to be twice placed in jeopardy. *See, e.g., United States v. Ataya,* 864 F.2d 1324 (7th Cir.1988) (after pleading guilty to two counts of an indictment, defendant refused to testify at codefendant's retrial; this was breach of plea agreement and government is no longer barred from seeking reindictment of defendant on all counts); *United States v. Gonzalez-Sanchez,* 825 F.2d 572 (1st Cir.) (defendant's failure to testify fully and honestly released government from its obligation under plea agreement not to prosecute defendant), *cert. denied,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *United States v. Reardon,* 787 F.2d 512 (10th Cir.1986) (defendant pled guilty to one count of attempting to possess cocaine and then failed to give truthful accounting of cocaine trafficking as required by plea agreement; government was justified in indicting defendant on the original counts and two additional counts the facts of which defendant related to agents during the course of his plea negotiations); *United States v. Wood,* 780 F.2d 929, 930 (11th Cir.) (defendant's breach of plea agreement which provided that "Government will be free from its obligations" if defendant did not comply with agreement's terms entitled government to reinstate original indictment), *cert. denied,* 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986); *United States v. Baldacchino,* 762 F.2d 170 (1st Cir.1985) (defendant's failure to fully and honestly cooperate with government entitled government to reindict defendant); *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.) ("It is clear that a defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement."), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981) (citations omitted). In general, these cases accept as obvious the principle that a defendant must be compelled to abide by his plea agreement both before and after his plea is entered and that in order to do so the government must have the option of moving to vacate a non-complying defendant's guilty plea and instituting more severe charges.

The Supreme Court has addressed the double jeopardy implications of vacating a guilty plea and reinstituting the original charges in *Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). The defendant in *Ricketts* had agreed to plead guilty to second-degree murder and to testify against other individuals in return for a specified prison term. When the convictions of the defendant's accomplices were overturned on appeal, the state ordered the defendant, who was already serving his sentence, to testify at the second trial. The defendant refused to testify, maintaining that his obligation under the agreement was complete. The state then tried and convicted him on a first-degree murder charge. A federal court of appeals eventually found that the state had violated the defendant's double jeopardy rights and overturned his conviction. In reversing the judgment of the court of appeals, the Supreme Court held that provisions of the plea agreement declaring the agreement "null and void" and automatically reinstating the original charge in the event of defendant's breach were equivalent to an express waiver of a double jeopardy defense. *Ricketts,* 483 U.S. at 9–10, 107 S.Ct. at 2685–86. Further, a provision which stated the parties would return to their original positions prior to the agreement in case of breach by the defendant operated to return the parties to the *status quo ante,* in which case the defendant had no double jeopardy defense to waive. *Id.* at 10, 107 S.Ct. at 2686. The Court reasoned that to hold these provisions to mean otherwise "would render the agreement meaningless" and allow the defendant to refuse to honor his obligations under the agreement with impunity. *Id.*

We conclude that here, as in *Ricketts,* the defendant has waived his double jeopardy defense in the plea agreement he signed. The plea agreement provides in pertinent part:

    3. Mr. Britt will provide complete and truthful information to the attorneys and law enforcement officers of the govern-

ment, and the federal grand jury conducting this investigation ... Since the United States insists upon Mr. Britt telling the truth and nothing but the truth during this investigation and in the event he should be called as a witness, *his failure to provide truthful information will render this agreement void.*

. . . . .

5. It is understood that, upon request by the government, Mr. Britt will voluntarily submit to a polygraph examination ... *If the totality of circumstances convinces the government that his statement is not complete and truthful, he will be so informed and any and all obligations imposed on the government by this agreement will be rendered null and void.*

. . . . .

12. If he violates the terms of this agreement, any such testimony or other information provided by him at any time to attorneys or law enforcement officers of the government, or the federal grand jury, may and will be used against him. No statements or other information provided by him shall be deemed to be precluded from use against him in the case of his breach of this agreement.

Appellant's Appendix at A–2, A–3, A–5 (Initial Plea Agreement at ¶¶ 3, 5, 12) (emphasis added).

Britt argues that because his plea agreement contains no *status quo ante* provisions expressly reinstating the original drug charges or returning the parties to their original positions, he did not waive his double jeopardy rights. We disagree. *Ricketts* does not stand for the proposition that only those plea agreements with a *status quo ante* provision will be held to waive a defendant's double jeopardy rights. The waiver in *Ricketts*, in fact, arose out of the "null and void" language that is also present in Britt's plea agreement. *See Ricketts*, 483 U.S. at 9–10, 107 S.Ct. at 2685–86. *Ricketts* supports the position that language in a plea agreement will be given its ordinary, logical meaning and a defendant can waive his double jeopardy rights even when the phrase "double jeop-

ardy" does not appear anywhere within the agreement. *Ricketts*, 483 U.S. at 9–10, 107 S.Ct. at 2685–86.

The language of Britt's plea agreement is clear: If Britt is not completely truthful in the information he gives to law enforcement agents "all obligations imposed on the government by this agreement will be rendered null and void," Appellant's Appendix at A–3 (Initial Plea Agreement ¶ 5), and "any such testimony or other information provided by him at any time ... may and will be used against him." *Id.* at A–5 (Initial Plea Agreement at ¶ 12). As the Court in *Ricketts* suggested, the terms "null and void" can mean only that the government's obligations—chiefly, not to file additional charges—are dissolved, leaving the government free to bring any charges it chooses. Moreover, the agreement specifically provides that if Britt violates its terms the government may use against him any and all information provided by him to government attorneys or law enforcement officers. We believe the government bargained for more here than did the state in *Ricketts;* Britt's breach did not merely reinstate an earlier charge, but rather allowed the government to use Britt's own admissions against him in filing more severe charges.

■■■ In addition, and as an alternative ground for our decision, we believe that analogous to the situation where a mistrial has been declared over the defendant's objection, the reprosecution of Britt is not precluded if his guilty plea was set aside because of "manifest necessity." *See Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). As applied to the mistrial situation, the Double Jeopardy Clause protects two principal interests.

First, individuals should be spared the emotional and financial hardship of successive prosecutions at the powerful hand of the State. Second, defendants must be protected from the unfairness of a mistrial declaration designed to give the government a second chance to convict when the first is going badly.

Lovinger v. Circuit Court of the 19th Jud. Circuit, 845 F.2d 739, 743 (7th Cir.), cert. denied, 488 U.S. 851, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988) (citations omitted). These important interests must be weighed against "the public's interest in fair trials designed to end in just judgments." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). Courts' efforts to balance these conflicting goals has led to the general rule that when a mistrial is declared over a defendant's objection, reprosecution of the defendant is not barred if the trial was terminated out of "manifest necessity." Arizona, 434 U.S. at 505, 98 S.Ct. at 830. We believe a similar standard is appropriate in reviewing the District Court's decision to vacate Britt's guilty plea.

The phrase "manifest necessity" does "not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." Arizona, 434 U.S. at 506, 98 S.Ct. at 830–31. Here, the District Court was confronted with a defendant who, after his guilty plea was accepted but prior to sentencing, willfully failed to fulfill his obligations under the plea agreement pursuant to which he pled. To allow the Double Jeopardy Clause to shield Britt from prosecution on more severe drug charges after he purposefully attempted to deceive government agents and concealed evidence at the trial of a codefendant would be a grave injustice. "[T]he Double Jeopardy Clause ... does not relieve a defendant from the consequences of his voluntary choice," Ricketts, 483 U.S. at 11, 107 S.Ct. at 2686 (quoting United States v. Scott, 437 U.S. 82, 99, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978)), and the government here should not be bound by a plea entered pursuant to the terms of an agreement that the defendant himself chose to violate.

For the reasons discussed above, we hold that the Double Jeopardy Clause does not bar the setting aside of Britt's guilty plea and the filing of more serious charges against him.

III.

Britt argues that the District Court's decision to vacate his guilty plea violated contract law principles because: (1) Britt relied on the plea agreement; (2) the government waived its right to complain of Britt's untruthfulness by allowing him to plead guilty and accepting his testimony at Stevens' trial; and (3) the government's sole remedy under the plea agreement for Britt's untruthfulness is to prosecute him for perjury. We disagree with each of these contentions.

At the outset we note that Britt does not directly challenge as clearly erroneous the District Court's finding that he materially breached his plea agreement, although throughout his brief he emphasizes the extent of his cooperation with the government. The District Court's finding that Britt materially breached the agreement by withholding information regarding his own and others' drug trafficking is amply supported by the record and our consideration of Britt's claims is premised on this finding.

A plea agreement is contractual in nature and generally governed by ordinary contract principles. United States v. Brown, 801 F.2d 352, 354 (8th Cir.1986). A plea agreement is more than merely a contract between two parties, however, and must be attended by constitutional safeguards to ensure a defendant receives the performance he is due. Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Britt's attempt to use contract principles of fairness and equity to enforce the government's obligations under his plea agreement fails because Britt himself is the breaching party.

It is disingenuous of Britt to argue that he "relied" on the plea agreement in testifying against Stevens, participating in a controlled buy, and making several recorded phone calls to suspected drug traffickers. This is exactly the performance that the agreement contemplated and Britt was fully aware of the government's expectations when he entered his plea of guilty. See United States v. Coon, 805 F.2d 822, 825 (8th Cir.1986) ("The only change in

position that can be considered 'detrimental reliance' is the actual entry of an involuntary guilty plea."). Britt also understood that the agreement obligated him to testify truthfully and to make full disclosure of what he knew; this he did not do. He now is in the untenable position of arguing that in performing a portion of the cooperation required by his plea agreement he detrimentally relied on the government's inability to discover his deceitfulness and dishonesty in his nonperformance of his remaining obligations.

Britt's argument that he substantially performed his obligations under the agreement and that the government's obligations cannot be dissolved because it received considerable benefit from his performance is similarly unpersuasive. First, Britt's breach of the agreement cannot be considered minor; as the District Court found, Britt repeatedly lied and concealed information regarding large-scale drug trafficking activity. Second, the fact that the government may have benefitted from Britt's partial performance does not bar the government from moving to vacate his guilty plea on the ground of his material breach of the plea agreement. *Brown*, 801 F.2d at 354–55 (reversing district court's ruling that government could not prosecute defendant for original offense because government had received benefits of defendant's cooperation and remanding with instructions that if district court found defendant had breached agreement government is no longer bound by agreement not to prosecute).

■ Britt next claims that the government waived its right to complain of his dishonesty when it allowed him to plead guilty and accepted his testimony in Stevens' trial when the government already suspected that Britt was not completely truthful in his debriefing sessions with law enforcement agents. *See United States v. Vogt*, 901 F.2d 100 (8th Cir.1990) (holding that government waived its right to complain of defendant's breach when after defendant admitted to agents that he was lying, government called defendant to testify before a grand jury on two occasions

and did not move to vacate defendant's plea until ten weeks after defendant's admissions of untruthfulness). The District Court here found, however, that Britt did "not come forward with any persuasive evidence that the government continued to solicit and/or accept the benefit of the bargain after it knew or should have known of the breach." *U.S. v. Britt*, No. 89–2719, at 4 (order granting government's motion to vacate plea). This finding is not clearly erroneous. Britt did not admit of any dishonesty in his statements to agents until after entering his guilty plea and testifying at Stevens' trial and Stevens did not come forward with his evidence until after his trial and conviction. The day after Stevens informed the government of Britt's deceptions, the government ordered Britt to undergo a polygraph examination and approximately two weeks later informed Britt that it considered him to have violated his plea agreement. We do not believe that the government's actions constituted an unreasonable delay or a waiver of Britt's noncompliance.

■ Britt contends that the government's remedy for his untruthful statements is specified by the plea agreement and is limited to prosecution for perjury. In support of this claim, Britt points to the following language:

4. No testimony or other information provided by Mr. Britt to the United States Attorney's Office or law enforcement officers or the federal grand jury conducting this investigation, pursuant to this agreement, or any information directly or indirectly derived from such testimony or other information, will be used against him in a criminal trial, except in a prosecution for perjury or giving a false statement, *provided that Mr. Britt does not violate the terms of this agreement pursuant to which the grant of immunity is being made.*

Appellant's Appendix at A–2 (Plea Agreement at ¶ 4) (emphasis added). We believe that this provision is clear and does not support Britt's position. Britt's grant of immunity continues only so long as he abides by the terms of the agreement.

Once a breach occurs, the plea agreement and the government's obligations under it are dissolved and the government's remedy is no longer limited to criminal prosecutions for perjury.

We reject Britt's contention that contract principles bind the government to honor its obligations under the initial plea agreement despite his material breach of the agreement.

## IV.

■ Finally, Britt claims that the District Court's decision to vacate his guilty plea was based on improper and unconstitutionally derived evidence. Specifically, Britt argues that the results of his polygraph examination should not have been admitted and the tape-recorded evidence gathered by Stevens after Britt's guilty plea violated Britt's Sixth Amendment right to counsel.

This Court has traditionally held "that polygraph examination results should not be admitted absent a stipulation." *Anderson v. United States*, 788 F.2d 517, 519 n. 1 (8th Cir.1986). At the hearing on the government's motion to vacate Britt's guilty plea the District Court admitted the results of the polygraph examination despite the contention of Britt's counsel that the federal rules of evidence applied to the hearing. The court stated that it was reserving its rulings on objections until a later time. There is no indication in the record as to what was the District Court's conclusion in this regard and there is no mention of the polygraph examination in the court's order. We do not now decide whether the federal rules of evidence apply to this type of hearing because we conclude that any error committed by the District Court in admitting polygraph evidence was harmless. There was ample evidence aside from the polygraph examination to show that Britt did not provide complete and truthful information to law enforcement agents. In November 1988, Britt himself admitted to a DEA agent that he had concealed his involvement with significant drug trafficking activity. Stevens' testimony at the hearing before the District Court was extensive and detailed regarding Britt's attempts to deceive law enforcement agents and his perjury at Stevens' trial. Whatever weight may have been given to the results of the polygraph examination (and for all we know the District Court may not have given it any weight), we are satisfied that the exclusion of this evidence would have had no effect on the District Court's decision and that its admission was therefore harmless. *See United States v. Hawley*, 855 F.2d 595, 603 (8th Cir.1988), *cert. denied*, 489 U.S. 1020, 109 S.Ct. 1141, 103 L.Ed.2d 202 (1989).

■ Britt's claim that Stevens elicited incriminating statements from Britt concerning the drug conspiracy to which Britt pled guilty in violation of Britt's Sixth Amendment right to counsel is without merit. After the right to counsel has attached with respect to one crime, the government may investigate a defendant without counsel as to "other crimes to which the Sixth Amendment right has not yet attached." *Maine v. Moulton*, 474 U.S. 159, 180 n. 16, 106 S.Ct. 477, 489 n. 16, 88 L.Ed.2d 481 (1985). To hold otherwise "would be essentially to immunize a defendant from further prosecution." *United States v. Nocella*, 849 F.2d 33 (1st Cir.1988) (quoting *United States v. Batista*, 834 F.2d 1, 4 (1st Cir.1987)). As the District Court found, when the government sent Stevens to record his conversation with Britt "the government sought to investigate [Britt] as to perjury and obstruction of justice." *U.S. v. Britt*, No. 89–2719, at 3 (order granting government's motion to vacate plea). The purpose of the hearing at which Britt's recorded statements were introduced was to prove that Britt lied to agents concerning his participation in drug trafficking crimes and that he committed perjury at Stevens' trial. These matters clearly are distinct from the drug conspiracy to which Britt had pled guilty. While the tape-recorded statements could not be introduced at a proceeding designed to prove that Britt had conspired to distribute marijuana, they were properly admitted to demonstrate that Britt had breached his plea agreement and perjured himself. Britt's

Sixth Amendment right to counsel therefore was not violated by the introduction of his recorded statements at the hearing on the government's motion to vacate his plea agreement.

## V.

Finding no merit in any of Britt's claims, we affirm the order of the District Court vacating Britt's plea agreement and guilty plea.