**UNITED STATES of America, Plaintiff,**

v.

**Leonard PATRICK, et al., Defendants.**

**No. 91 CR 727.**

United States District Court,
N.D. Illinois, E.D.

June 17, 1993.

See also, 796 F.Supp. 354, 790 F.Supp. 798, 790 F.Supp. 801, 789 F.Supp. 953, 791 F.Supp. 723, 788 F.Supp. 359.

---

Chris C. Gair, Mark J. Vogel, U.S. Attorneys' Office, Chicago, IL, for plaintiff.

Jo–Anne F. Wolfson, Chicago, IL, for M. Rainone.

Carl M. Walsh, Chicago, IL, for G. Alex.

Sam Adam, Chicago, IL, for G. Alex.

Luis M. Galvan, Chicago, IL, for L. Patrick.

Marvin I. Bloom, Chicago, IL, for N. Gio.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is the government's Motion to Revoke Plea Agreement of defendant Leonard Patrick ("defendant" or "Patrick"). Defendant was originally charged with racketeering and conspiracy in a six-count indictment in this case. He agreed to cooperate with the government and to plead guilty to a two-count superseding information, however, and the government agreed to dismiss the six-count indictment against him at the time of sentencing ("the plea agreement"). Be-

tween April and August 1992, defendant provided substantial assistance and information to the government. On August 6, 1992, defendant pleaded guilty to the two-count information. On September 16, 17, 18, 21 and 22, 1992, defendant testified before this court in *United States v. Alex,* No. 91 CR 727 ("the *Alex* case"). On March 10, 1993, this court sentenced Patrick to six years in prison pursuant to the plea agreement and, pursuant to the government's motion, dismissed the indictment against him.

On February 17, 1993, Patrick testified for the government in *United States v. Carlisi,* No. 93–0026–E (S.D.Cal.1993) (Enright, J.) ("the *Carlisi* case"). According to the government, defendant testified falsely in the *Carlisi* case in violation of the plea agreement. Paragraph 12 of the plea agreement states:

> Defendant agrees he will fully cooperate with the government in any investigation in which he is called upon to cooperate. Defendant agrees to provide complete and truthful testimony, if called upon to testify, before any federal grand jury and United States District Court proceeding. Defendant acknowledges that in the event he provides false information to the United States or testifies falsely in any proceeding, this plea agreement is null and void and the government is free to prosecute him for any of the matters charged in the superseding indictment.

The government argues that Patrick breached this part of the plea agreement by testifying falsely in the *Carlisi* case. The government, therefore, moves for an order revoking defendant's plea agreement and vacating the judgment and commitment order and reinstating the indictment against him.

■ "A plea agreement is a contract . . . with special due process concerns for fairness . . .". *United States v. Ataya,* 864 F.2d 1324, 1329 (7th Cir.1988). In determining whether to revoke a plea agreement, the "court must examine whether there has been a 'substantial breach' of the plea agreement . . . 'in light of the parties' reasonable expectations' upon entering the agreement." *Ataya,* 864 F.2d at 1330. In this case, the defendant concedes that he lied while testifying in the

*Carlisi* case. *See* Defendant's Response to the Government's Motion, at p. 2 ("There is no question that Mr. Patrick made false and inconsistent statements in the San Diego trial, whether or not those statements were 'material' is extremely questionable"). Furthermore, the defendant does not dispute any of the inconsistencies in his testimony asserted by the government. Therefore, the only question this court must decide is whether the breach is a material one.[1] To do so, we will examine the false testimony given in the *Carlisi* case.

According to the government, and conceded by Patrick, Patrick made the following inconsistent statements while testifying in the *Carlisi* case. First, regarding the murder of Herman Gleck,

(a) In the *Carlisi* case, Patrick falsely testified with respect to the killing of Herman Gleck that Gleck had pulled a pistol on him (SD Tr. 29)[2], that Gleck had a gun (SD Tr. 44), and that Gleck "went for his pocket anyhow. That's why he got shot." (SD Tr. 45).

(b) Patrick discussed the murder of Herman Gleck with representatives of the government on a number of occasions during 1992, including on April 9, 1992. Patrick never told the FBI or the prosecutors that Gleck had a gun, reached for his pocket or pulled a gun prior to Patrick shooting him. Instead, Patrick informed the FBI that a few days after an altercation between Gleck and himself, Patrick got a gun, observed Gleck walking in front of a synagogue, approached Gleck and shot him. In addition, Patrick testified in the *Alex* case that: 'We had an argument and he hit me and I went down and I killed him a week later ... I shot him in the head.' (Chi.Tr. 9/16/92 at 8). Patrick also testified that Gleck 'didn't have a gun with him.' (Chi.Tr. 9/17/92 at 43–44).

Regarding the murder of Harry Krotish,

(a) In the *Carlisi* case, Patrick falsely testified with respect to the killing of Harry Krotish that Krotish "went for a pistol" and Patrick shot him (SD Tr. 31), and that Krotish 'pulled a pistol on me in the car and I shot him.' (SD Tr. 32).

(b) Patrick discussed the murder of Harry Krotish with representatives of the government on a number of occasions during 1992, including on June 23, 1992. Patrick never told the FBI or prosecutors that Krotish went for a pistol or pulled a pistol on him. Patrick told the FBI that he and his partner, Davey Yaras, were angry with Krotish and decided that they had to kill him in order to maintain control of their gambling operations. Patrick said that he and Yaras picked up Krotish in a car, they drove toward the south side, and Patrick shot Krotish in the stomach twice and then in the head. In addition, Patrick testified in the *Alex* case, and nothing in that testimony suggested that Krotish tried to pull a weapon. Patrick testified as follows:

Q: Tell us how that murder took place.

A: No place. I just shot him that is all.

(Chi.Tr. 9/17/92 at 57). Patrick also testified:

A: I lured him into my car.

Q: And when he got in your car.

A: I shot him.

(Chi.Tr. 9/17/92 at 58). In addition, Patrick testified:

A: He was going to kill me.

Q: Well, he didn't get—you didn't get in his car and he didn't shoot you, did he.

A: I didn't give him a chance to. It could have been the other way around.

(Chi.Tr. 9/17/92 at 58).

Regarding the Murder of Davy Zatz,

(a) In the *Carlisi* case, Patrick falsely testified with respect to the killing of Davy Zatz that Zatz 'had two pistols on him. He

---

1. Neither party raises any factual dispute. In fact, defendant's attorney stated in open court on May 17, 1993 that no factual issues were contested and, in his opinion, no hearing is required. The court agrees and no hearing was held. *See United States v. Claiborne,* 805 F.Supp. 601 (N.D.Ill.1992).

2. References to the transcript in the *Carlisi* case in San Diego are denominated "SD Tr." References to the transcript from the *Alex* case are denominated as "Chi.Tr."

pulled one out. That's why he got shot.' (SD Tr. 33–34). The defendant also falsely testified as follows:

Q: Mr. Patrick, when you and Davy Yaras went over there, did you have the intent to kill him?

A: No.

Q: You just came over there, and he pulled a pistol, and you killed him?

A: Yes. We were talking there, and that's what happened. He went for his gun, and that's it.

(SD Tr. 34).

(b) Patrick discussed the murder of Davy Zatz with representatives of the government on a number of occasions during 1992, including on June 23, 1992. Patrick never told the FBI or prosecutors that Zatz had a pistol or tried to pull a pistol, nor did Patrick ever say that he had no prior intention of killing Zatz. To the contrary, Patrick advised the FBI that David Yaras did not like Zatz and wanted to get rid of him. Accordingly, Patrick said, they arranged to meet him, ostensibly to sell him some jewelry. While Zatz was with him, Yaras shot him to death. In addition, Patrick testified in the *Alex* case that he and Yaras agreed that Zatz would be killed and that Yaras shot him. (Chi. Tr. 9/16/92 at 30). Patrick also testified that he and Yaras had lured Zatz to a meeting and Yaras then murdered him. (Chi.Tr. 9/17/92 at 59).

Next, regarding the murder of Milton Glickman,

(a) In the *Carlisi* case, Patrick falsely testified with respect to the killing of Milton Glickman that he 'didn't know in advance' that Glickman would be killed (SD Tr. 49), and that he did not order his partner, Hershey Kolvin, to kill Glickman (SD Tr. 37). Patrick also falsely testified that 'it wasn't my plan. My plan was to talk to him and everything. Started talking to him, and he went for his pistol, and that's when Hershey shot him.' (SD Tr. 49).

(b) Patrick discussed the murder of Milton Glickman with representatives of the government on a number of occasions during 1992, including on June 23, 1992. Pat-

rick never told the FBI or prosecutors that Milton Glickman had a gun on the day of the shooting, had pulled a gun or had gone for a gun. Nor did Patrick ever tell the government that he did not plan to kill Glickman in advance. In fact, Patrick told the FBI that after Glickman had stolen some money, Patrick and Kolvin got him in back of a restaurant and then Kolvin shot him. In addition, Patrick testified in the *Alex* trial that Kolvin 'broke into that [operation] and a lot of other things and we shot him.' (Chi.Tr. 9/16/92 at 31). Patrick also admitted that Kolvin shot Glickman on his order (Chi.Tr. 9/16/92 at 31). Patrick further testified that he killed Glickman because 'He was too smart. He was getting smart. He was stealing—breaking in and stealing money and he laughed about it and he was going to do this and that and that is what happened to him too.' (Chi. Tr. 9/17/92 at 61). When asked whether he knew that Kolvin was going to shoot Glickman, Patrick admitted 'I must have. I was there.' (Chi.Tr. 9/17/92 at 61).

Finally, Patrick testified falsely as to other general matters as follows:

(a) In the *Carlisi* case, Patrick also testified falsely with respect to killings he had participated in as follows:

Q: So, on any of these, you didn't plan ahead of time to kill him (sic), did you?

A: No.

Q: It was all spur-of-the-moment killings?

A: That's right.

(SD Tr. 34).

(b) Patrick never claimed to the FBI or the prosecutor that his killings were all unpremeditated, nor did he so testify in Chicago. In fact, Patrick's prior statements and testimony concerning all six of the murders he participated in made clear that each was premeditated. Indeed, Patrick even testified in the *Carlisi* case that he planned to have Eddie Murphy, another of his murder victims, killed. (SD Tr. at 50).

None of these assertions is disputed by the defendant. Furthermore, before proceeding,

it should be noted that neither the government nor Patrick assert that Patrick testified falsely in the *Alex* case. In fact, after observing Patrick testify in *Alex* and based on the content of that testimony wherein Patrick directly, candidly and without reservation implicated himself in multiple killings, the court has no reason to believe that Patrick testified untruthfully in that trial.

Thus, as stated above, we must determine if defendant's false testimony in the *Carlisi* case constitutes a substantial breach of the plea agreement in light of the parties' reasonable expectations. We hold that it does and, thus, the defendant materially breached the plea agreement.

The plea agreement itself expresses the reasonable expectations of the parties. The defendant expected to be sentenced to six years of imprisonment instead of taking a chance on being convicted on the six counts of the indictment and probably spending the rest of his life in prison. The government reasonably expected to get a cooperating witness who would testify truthfully and completely whenever called upon to do so. The defendant received his half of the bargain when he was sentenced to six years under the two-count, superseding information and the court dismissed the indictment. The government, however, did not receive all of what it expected to receive. Paragraph 12 of the plea agreement is very clear. The government reasonably expected that the defendant would

> fully cooperate with the government in any investigation in which he is called upon to cooperate [and] provide *complete and truthful testimony* ... before any federal grand jury and United States District Court proceeding.

Plea Agreement ¶ 12 (emphasis added). The defendant clearly, and admittedly, failed to live up to this requirement.

The defendant now argues that this breach is not material because his testimony had an insignificant effect on the *Carlisi* trial and because the government nevertheless received the benefit of its bargain. In support of this "insignificant testimony" argument, defendant argues that he was not testifying directly against Carlisi but only providing background information relevant to organized crime. The defendant further argues that, because his untruths were limited to information about himself, the testimony was even more insignificant. We do not agree. As stated clearly and directly in paragraph 12 of the plea agreement, the defendant is required to testify completely and truthfully in all proceedings as to all matters. No exception is made for personal information or information which, the defendant asserts, did not affect the jury. Presumably a jury listens conscientiously to everything any witness says and judges each witness accordingly. The court cannot now speculate as to how the false testimony in the *Carlisi* case affected that jury.

In further support of his argument, defendant cites *United States v. Fitch*, 964 F.2d 571, 575 (6th Cir.1992) and *United States v. Feliciano*, 787 F.Supp. 846, 851 (N.D.Ill. 1992). Neither is dispositive of the issue in this case. *Fitch* is not persuasive because, there, the defendant did not testify falsely under oath at trial and "[t]here was no provision in the agreement which operated to void the agreement upon breach, or which allowed the government to pursue other criminal charges against the defendant." *Fitch*, 964 F.2d at 574–75. Furthermore, the *Fitch* court held that the defendant's omissions were not material because the "government received the benefit of its bargain" by securing indictments against individuals implicated by Fitch. Applying this rationale here does not benefit Patrick because the government has not received the benefit of its bargain. Patrick was not cooperating to only secure indictments, but to secure convictions as well. By testifying untruthfully in the *Carlisi* case, his credibility and, thus, his usefulness, have been called into question in any future proceeding. As such, the government has not received the full benefit of its bargain. *See United States v. Britt*, 917 F.2d 353, 360 (8th Cir.1990) ("the fact that the government may have benefitted from Britt's partial performance does not ban the government from moving to vacate his guilty plea on the ground of his material breach of the plea agreement.") *Fitch*, therefore, does not aid the defendant.

The *Feliciano* case, furthermore, supports the government's position in this case. In *Feliciano*, this court granted the government's motion to vacate Feliciano's plea agreement because he provided conflicting evidence to law enforcement officials prior to trial, making "his availability as a witness useless to the government." *Feliciano*, 787 F.Supp. at 851–52. Patrick argues here that, unlike Feliciano, his testimony was not a "key component" in the case and his testimony was not such as to make him "useless" in the future. This, even if true, is not controlling. While this court made those determinations in *Feliciano*, they are not necessary in each case to revoke a plea agreement. Therefore, the unique facts of that case do not work to control our determination in this case.

 Lastly,[3] defendant argues that his testimony is insignificant, and thus the breach immaterial, because he is believable only to the extent his testimony is corroborated. Furthermore, he argues, the government is well aware of this because it has previously sought to corroborate his testimony, and in the past referred to him as a crook, a villain, a member of organized crime, an extortionist and a killer. Defendant's Response to Government's Motion, at p. 7. Therefore, he argues, his false, but uncorroborated, testimony regarding the murders is immaterial. This is not persuasive. In the *Alex* case the government did, indeed, corroborate some of Patrick's testimony with taped conversations and other witnesses. This does not mean, however, that is all any jury would ever believe from Patrick or that is all the government expected from Patrick. Furthermore, Patrick did not agree in the plea agreement to testify truthfully only as to corroborated facts. He agreed to testify completely and truthfully to all matters. Therefore, the fact that the government often can, and does, corroborate Patrick's testimony does not minimize his breach of the plea agreement.

## CONCLUSION

For the foregoing reasons, the court finds that Patrick substantially and materially breached the plea agreement he entered into with the government. As such, the government's Motion to Revoke the Plea Agreement is granted. It is ordered that the plea agreement between the United States and Leonard Patrick is vacated. Furthermore, the court hereby orders that its judgment of guilty and its commitment order of Leonard Patrick be vacated. Lastly, it is hereby ordered that the counts of the indictment in this case filed December 18, 1991 against Leonard Patrick are reinstated.

---

**3.** Defendant also makes a last-ditch effort to argue that the government's alleged delay in bringing the present motion should work to defeat it. We disagree. The defendant raises no hint of impropriety and, as explained by the government, its handling of the breach of the plea agreement has not been inappropriate.