**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Leon J. WOOD, III,**
**Defendant-Appellee.**

**No. 85–3261.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 21, 1986.

John M. Fitzgibbons, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellant.

Frank Regano, Tampa, Fla., for defendant-appellee.

Before HILL and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

This is an appeal from the government's unsuccessful attempt to prosecute Leon J. Wood, III for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d). The United States District Court for the Middle District of Florida, adopting the magistrate's report and recommendation, dismissed the indictment against Wood, concluding that a non-prosecution agreement entered into by the government and Wood barred the prosecution. We reverse.

On May 20, 1983, while Wood was incarcerated at Florida's Lake Butler Correctional Facility for narcotics violations, he entered into a covenant with the government in which the government agreed not to prosecute Wood if he consented to

---

fully and truthfully disclose to law enforcement everything that he knows concerning offers to, or the actual bribery of any public official concerning any matter, about any other matter, including drug importation and drug distribution conspiracies now under investigation, and about any other matter as to which the Government may inquire and shall not at any time willfully fail to disclose any fact material to any such inquiry or matter.

The agreement also provided that if Wood "should fail in any way to fulfill completely each and every one of his obligations, then the Government will be free from its obligations to Mr. Wood."

Between May and December 1983, the FBI interviewed Wood on numerous occasions asking him about various matters relating to bribery attempts and drug trafficking. On January 12, 1984, Wood was arrested on narcotics charges for activities which allegedly took place in the Jacksonville area. He was subsequently acquitted by a jury of those charges. In April, 1984, government agents informed Wood that he had breached the immunity agreement. After the parties met unsuccessfully to work out their differences, the government indicted Wood in the case currently pending before this court.

An evidentiary hearing was held before a United States Magistrate on August 22, 1984. Subsequently, in a written report and recommendation, the magistrate concluded that the government failed to establish a "substantial breach of the specific terms of the agreement" and that Wood was entitled to "specific enforcement of the agreement." Magistrate's Report and Recommendation at 6. The district court adopted the report on March 7, 1985 and subsequently dismissed the indictment.

On appeal, the government first contends that the district court improperly applied a substantial compliance standard to Wood's obligations under the agreement instead of a strict compliance criterion. Second, it maintains that the district court's finding that Wood substantially complied with the contract is clearly erroneous. Because we agree with the latter argument, we need not decide whether the district court erred by adopting a substantial compliance rule.

The government alleges that on numerous occasions Wood withheld information pertaining to bribery attempts or drug transactions until he was confronted with independent facts establishing that he actually had knowledge of the relevant incidents. For example, United States Attorney Joseph Magri testified at the hearing before the magistrate that the government learned that Wood had sold cocaine to John Tamargo but Wood did not admit to the sale until after Magri challenged this denial with facts derived from another source. Supplemental Record on Appeal, Vol. III at 209, 212. Also, the government contends that Wood initially told them that he had paid $50,000.00 to Angelo Bedami to have him bribe state officials in the Hillsborough County Sheriff's Office but that he asked for a return of the money. Subsequently, the government discovered that Wood had again furnished the money to Bedami and when they confronted him with that fact, he admitted that he did give the money to Bedami on a second occasion. Supplemental Record on Appeal, Vol. III at 135. The government urges that these incidents, along with numerous others,[1] demonstrate a breach of the agreement.

In response, Wood simply claims that he eventually cured all of these alleged violations and that the district court's finding that he did not breach the agreement because of the corrections should be sustained. Even if we were to agree with this explanation, we must overturn the district court's decision because Wood breached the agreement by not disclosing the drug activ-

---

**1.** Wood admitted at the hearing that he initially did not tell the government about the involvement of David Grimes in drug transactions because Grimes was "like a brother to him."

Wood did tell the government about Grimes' drug activities in subsequent interviews. *See* Appendix to Appellant's Brief at 193.

ities leading up to his arrest in Jacksonville.

Wood admitted at the hearing before the magistrate that he attempted to set up a drug deal with Robert Grogan in Jacksonville. Supp. Record on Appeal, Vol. II at 28, 34. He was arrested for these activities and subsequently acquitted by a jury. He testified at his trial that he was acting as a quasi-law enforcement officer attempting to set up Grogan and that he never intended to actually consummate the drug transaction. He reaffirmed this position in the hearing before the magistrate. *Id.* at 36. He also admitted that he did not tell the government about these efforts. He testified as follows before the magistrate:

Q. You were engaged in an undercover operation on your own; is that your testimony?

A. Yes, sir, I was.

Q. And you had knowledge that other individuals were attempting to commit a crime involving a large amount of narcotics; isn't that correct?

A. They were talking about it, yes, sir.

Q. And you did not reveal that information to Agent Wooldrige?

A. No, sir....

*Id.*

Wood defends his failure to inform the government about the Jacksonville drug scheme on the ground that he was never asked about it. He stated that he was only asked about drug activities in the Tampa Bay area and not in Jacksonville. Assuming the truth of that testimony, it is nonetheless clear that Wood breached the agreement by intentionally withholding the information. Wood described his obligations under the agreement:

My understanding was that I would give information, tell them everything I knew about bribe attempts or drug importation and trafficking that was then under investigation *or that I had knowledge of* and in return I would not be prosecuted in any way by the federal government. (emphasis added).

*Id.* at 10.

In light of this concession, Wood's explanation for his failure to tell the government about the drug activities in Jacksonville does not satisfy the requirements of his contract. He admitted that he knew about a possible drug deal and yet failed to disclose that information to the government purportedly because they did not specifically mention Jacksonville in their inquiry.[2] Under his own interpretation of his duties under the contract, however, he had a continuing obligation to reveal that information regardless of whether he was specifically asked about it. In our view, this failure to disclose the Jacksonville drug activities, standing alone, constitutes a substantial breach of the contract.

The district court held that Wood's failure to tell the government agents of his Jacksonville activities did not amount to a substantial breach of the contract because the "matter was not under investigation at the time of the agreement, the Government did not make specific inquiry concerning the matter [and] the incidental references to possible police corruption has [sic] been fully disclosed by Mr. Wood both at trial and thereafter. Mr. Wood was acquitted by a jury that must have found his testimony credible in arriving at its conclusion." Record Excerpts at 110. The fact that the Jacksonville episode may not have been under investigation and that the government may not have made specific inquiry about it does not justify Wood's failure to disclose his knowledge of the drug scheme in light of his admission that he understood that he was required to fully disclose all information that he possessed concerning

---

**2.** Wood also testified that he didn't tell the government about his dealings in Jacksonville because he wanted to acquire all the information at one time and then "put everything in their lap for them." Otherwise he was afraid that the government "would have blown the whole case for me." Supp. Record on Appeal, Vol. II at 40. This reason does not excuse Woods' clear breach of the contract in light of the fact that he never came forward and told the government about the Jacksonville activities.

drug activities.[3] Furthermore, his acquittal on charges arising out of this course of conduct is irrelevant to the issues here because Wood has admitted that he had knowledge of people attempting to engage in illegal drug pursuits. It is simply not germane that a jury believed Wood when he testified that his participation in those transactions was for a lawful purpose.

We hold that Wood's failure to disclose his part in the Jacksonville drug undertaking amounted to a substantial breach of the contract and the district court's finding to the contrary is clearly erroneous. Therefore, under the terms of the agreement, Wood's failure to comply with his obligations nullifies the government's promise not to prosecute him and the government is entitled to have the indictment reinstated.[4]

REVERSED and REMANDED.

---

3. Wood's version of his obligations is consistent with the wording of the agreement and the government's understanding of the agreement.

4. Wood argues that it would be unfair to allow the government to use statements that he made after the time that the government considered the contract breached. This issue, however, relates to the admissibility of those statements not to the question of whether Wood violated the agreement. We express no opinion as to the admissibility of any statements made by Wood either before or after the breach of the contract.