The PEOPLE of the State of Colorado, Petitioner,

v.

Michael R. McCORMICK, Respondent.

No. 92SC334.

Supreme Court of Colorado, En Banc.

Oct. 4, 1993.

As Modified on Denial of Rehearing Oct. 25, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Clement P. Engle, Senior Asst. Atty. Gen., Denver, for petitioner.

Miller, Hale & Harrison, Daniel C. Hale, Boulder, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

In *People v. McCormick*, 839 P.2d 474 (Colo.App.1992), the court of appeals reversed the judgments of conviction and sentences imposed on Michael R. McCormick for murder and kidnapping, finding that the compulsory joinder provisions of section 18–1–408(2), 8B C.R.S. (1986), precluded the subsequent prosecution of the murder and kidnapping charges. It also remanded the case for further proceedings based on its determination that an incorrect standard of review was applied in evaluating whether Michael McCormick could enforce a plea agreement. We reverse the judgment of the court of appeals and remand the case to the court of appeals with directions to reinstate the judgments of conviction and sentences imposed for murder and kidnapping, and for review and determination of the issues raised by McCormick but not addressed by the court of appeals, and for further proceedings consistent with this opinion.

## I

This case arises from the appeals of two separate trials, both held in the Jefferson County District Court. In the first trial, the trial court found Michael McCormick guilty of eleven felony counts related to theft and fraud (the "theft case"). In the second trial, a jury found Michael McCormick guilty of two counts of first-degree murder and one count of second-degree kidnapping (the "murder case"). The court of appeals consolidated the appeals from the two cases, but in deciding the consolidated appeal did not address several issues raised by Michael McCormick. We granted certiorari to determine whether the court of appeals erred in finding that the subsequent prosecution of the murder cases was barred by the compulsory joinder provisions of section 18–1–408(2) and to determine the appropriate standard to be applied in evaluating whether a defendant has breached a plea agreement.

## A

### The Theft Case

On August 30, 1983, Bert Donoho did not appear at a truck stop in Wheat Ridge, Colorado where he had agreed to meet a fellow truck driver. The same day, Donoho failed to call his wife as he had promised her. The Wheat Ridge Police Department and the Federal Bureau of Investigation were notified of these events and began an

investigation into the disappearance of Donoho and his Kenworth truck and trailer.

In July 1984, the missing truck was located in Oregon. The investigation by law enforcement officials revealed that the truck was purchased at an auction in Arizona on consignment from Michael McCormick. The law enforcement officials, however, had no leads on Donoho and no firm evidence to connect Michael McCormick with his disappearance.

In January 1985, a statewide grand jury was convened in Denver at the direction of the Attorney General of the State of Colorado to investigate various complex criminal schemes that extended beyond the borders of a single county. Beginning in March 1985, Francis Oldham, an assistant Attorney General for the State of Colorado, presented evidence to the grand jury concerning various plans of Michael McCormick that involved the theft and sale of motor vehicles for financial gain.

In June 1985, the statewide grand jury returned a fourteen-count indictment against Michael McCormick.[1] Five of the fourteen counts either arose out of, or were related to, the theft of Donoho's truck and trailer. While the investigation of the theft and fraud charges produced evidence that was sufficient to indict Michael McCormick for the fourteen charges returned by the statewide grand jury, there was no evidence that would establish that Michael McCormick was involved in the disappearance and suspected murder of Donoho.

Venue for the theft case was designated in Jefferson County. Oldham was appointed pursuant to section 20–1–201(1)(c), 8B C.R.S. (1986), as a Special Deputy District Attorney for the First Judicial District to prosecute the fourteen-count indictment, and the trial in the theft case was set for April 1986, before Judge Polidori.

Michael McCormick was arrested on the theft indictment in California in July 1985, and was extradited to Colorado. After making bail, he fled to Nebraska, where he was once again arrested and returned to Colorado. Michael McCormick subsequently professed to have knowledge regarding the disappearance and the suspected murder of Donoho. Oldham began negotiating with the public defender representing Michael McCormick regarding a plea agreement in the theft case in exchange for the information concerning Donoho. In January 1986, Michael McCormick and Oldham executed a written plea agreement. See Appendix A.

Under the terms of the plea agreement, Michael McCormick promised to (1) "truthfully, faithfully, and fully provide accurate and verifiable information" concerning the homicide of Donoho and any other homicide of which he had knowledge; (2) assist law enforcement officials in locating the body of Donoho; (3) "co-operate fully and freely with the State in its investigation;" and (4) take and pass a polygraph test that would unequivocally demonstrate that he was truthful in stating that he had not personally killed any of the victims on which he gave information and had truthfully identified the killer.

The plea agreement provided that Michael McCormick would serve a period of actual incarceration of approximately two years for any convictions arising from the pending indictment in the theft case if he fulfilled his obligations under the agreement. The prosecution also promised not to charge or prosecute Michael McCormick for any homicide on which he provided information, as long as he was not the one who perpetrated the murder.

The parties agreed, however, that the plea agreement would be null and void *ab initio* if evidence, other than that which was derivative from Michael McCormick's statements, established probable cause that Michael McCormick personally committed the homicide of Donoho, or any other verifiable homicide. In such a case, both parties

---

1. The indictment charged Michael McCormick with four counts of theft, three counts of theft by receiving, three counts of unlawful possession of altered automobile parts, two counts of fraud by check, one count of first-degree aggravated motor vehicle theft, and one count of conspiracy to possess cocaine with intent to distribute.

would be released from all obligations under the plea agreement.

Following the execution of the plea agreement and a subsequent waiver of his Fifth Amendment privilege against self-incrimination, Michael McCormick made a series of detailed statements to investigators concerning the disappearance of Donoho. He identified his father, Thomas McCormick, as the person who murdered Donoho. He also led law enforcement officials to a grave site, where they recovered Donoho's skeletal remains. Michael McCormick later passed a polygraph examination.

Thomas McCormick was subsequently arrested for first-degree murder. In March 1986, Michael McCormick testified at his father's preliminary hearing. Several credible witnesses called by defense counsel for Thomas McCormick contradicted Michael McCormick on significant points in his testimony. Nonetheless, the trial court found that there was probable cause to proceed with a first-degree murder trial against Thomas McCormick.

Later statements of Michael McCormick to the District Attorney's Office for the First Judicial District and law enforcement officials during interviews conducted during April and May 1986, contained a number of blatant inconsistencies regarding critical events. These subsequent statements directly implicated his brother, John McCormick, and also suggested Michael McCormick's estranged wife, Kathy McCormick, was involved in the murder of Donoho. In the later statements, Michael McCormick also admitted that he withheld information in his earlier statements. Throughout this period during the investigation, the District Attorney's Office for the First Judicial District continued to believe that Thomas McCormick committed the murder of Donoho.

Because of its misgivings concerning whether Michael McCormick was telling the truth, however, the District Attorney's Office for the First Judicial District continued to investigate his story. Investigators reinterviewed witnesses in an attempt to corroborate Michael McCormick's subsequent statements, but their efforts often contradicted, rather than supported his statements. By late June 1986, it was clear that Michael McCormick had been lying about his involvement in the disappearance of Donoho from the beginning and that he had breached the plea agreement. All of the evidence and the irrefutable conflicts in the various stories pointed to Michael McCormick as the murderer of Donoho. It was also obvious that a murder case against Thomas McCormick could not be proved because Michael McCormick was not a credible witness.

As a result of these considerations, the District Attorney's Office for the First Judicial District elected to *nolle prosequi* as to Thomas McCormick and to pursue murder charges against Michael McCormick. The District Attorney's Office for the First Judicial District informed the public defender representing Michael McCormick by letter dated and delivered on June 30, 1986, that it considered the plea agreement null and void because of Michael McCormick's failure to fulfill his obligations.[2] On July 9, 1986, the District Attorney's Office for the First Judicial District dismissed the murder charges against Thomas McCormick and filed an information charging Michael McCormick with the kidnapping and murder of Donoho. *See infra* section II.B.

On July 17, 1986, defense counsel for Michael McCormick filed two motions in the theft case. One motion sought the appointment of a Special Prosecutor and the disqualification of the District Attorney's Office for the First Judicial District and the Colorado Attorney General from prosecuting the theft case. On July 21, 1986, Judge Polidori disqualified the First Judicial District Attorney's Office and Oldham in his capacity as a Special Deputy District Attorney for the First Judicial District from the theft case. Judge Polidori, however, did not appoint a Special Prosecutor at that time.

---

**2.** The letter was signed by Oldham and John E. Byron, an Assistant District Attorney.

The second motion which was also filed on July 17, 1986, by defense counsel for Michael McCormick sought specific performance of the plea agreement. On July 23–24, 1986, Judge Polidori conducted a two-day evidentiary hearing on Michael McCormick's motion to enforce the plea agreement in the theft case. Judge Polidori found that although Michael McCormick fulfilled many of his obligations under the plea agreement, he breached the obligation to truthfully, faithfully, and fully provide accurate and verifiable information regarding the murder of Donoho. Accordingly, she denied the motion to enforce the plea agreement.

On August 11, 1986, Judge Polidori appointed Robert R. Gallagher, Jr., the District Attorney for the Eighteenth Judicial District, as Special Prosecutor for the theft case, pursuant to section 20–1–107, 8B C.R.S. (1986).[3] Gallagher, in turn, appointed Oldham as a Special Deputy District Attorney for the Eighteenth Judicial District, and nominated him as Special Prosecutor for the theft case. The following day, Judge Polidori appointed Oldham, in his new capacity, as Special Prosecutor in the theft case.[4]

The same day that Judge Polidori appointed Oldham as Special Prosecutor in the theft case, the trial commenced. The trial court subsequently found Michael McCormick guilty of eleven of the counts charged in the indictment and he was sentenced to an aggregate term of forty-eight years of imprisonment.

**3.** Section 20–1–107 provides:

If the district attorney is interested or has been employed as counsel in any case which it is his duty to prosecute or defend, the court having criminal jurisdiction may appoint a special prosecutor to prosecute or defend the cause.

**4.** The cumulative effect of Judge Polidori's rulings was to disqualify the District Attorney's Office for the First Judicial District from the theft case, while allowing Oldham to prosecute the case. Judge Polidori granted Gallagher's motion to appoint Oldham as Special Prosecutor in the theft case based on her concerns that another prosecutor would not be able to pre-

**B**

### The Murder Case

The information charging Michael McCormick with the kidnapping and murder of Donoho was filed on July 9, 1986.[5] On July 14, 1986, Michael McCormick filed a motion to disqualify the District Attorney's Office for the First Judicial District from the murder case and to appoint a Special Prosecutor.

On August 8, 1986, Judge Wolvington granted the motion and disqualified the District Attorney's Office for the First Judicial District from the murder case. Unlike Judge Polidori, who did not disqualify Oldham from later acting as a Special Prosecutor in the theft case, Judge Wolvington disqualified Oldham from participating in any capacity in the murder case. Judge Wolvington, with the agreement of defense counsel for Michael McCormick, set the next court date for August 25, 1986, for the appearance of a Special Prosecutor and for the setting of further hearing dates. On August 25, Judge Wolvington appointed William Buckley, a Chief Deputy District Attorney for the Second Judicial District, as the Special Prosecutor for the murder case.

On September 16, 1986, Michael McCormick filed a motion to dismiss the murder case, raising for the first time a claim that the murder trial was barred by the compulsory joinder provisions of section 18–1–408(2), 8B C.R.S. (1986).[6] Judge Wolvington denied the motion because when jeopardy attached in the theft case on August 12,

pare the complex case for trial given the time constraints created by the right to a speedy trial. She considered the hardship involved and concluded that it would be oppressive to disqualify Oldham from the theft case.

**5.** The information filed by the District Attorney's Office for the First Judicial District in the murder case was not signed by Oldham.

**6.** The motion to dismiss was filed after Judge Wolvington denied Michael McCormick's motion to enforce the plea agreement. Like Judge Polidori, Judge Wolvington found that Michael McCormick had not truthfully, faithfully, and fully provided accurate and verifiable information regarding the Donoho murder.

1986, there was no prosecutor in the murder case that had authority to join the two cases.[7] We denied Michael McCormick's original proceeding seeking mandamus to require Judge Wolvington to show cause why the action should not be dismissed based on the alleged failure to comply with section 18–1–408(2).

In June 1987, a jury convicted Michael McCormick in the murder case. He was sentenced to life imprisonment for murder and four years for kidnapping, with both sentences to run consecutively to those imposed in the theft case.

## C

The court of appeals consolidated the theft case and the murder case on appeal. A divided panel of the court of appeals reversed the judgments of conviction in the murder case, finding that the prosecution of the murder and kidnapping charges was barred by the compulsory joinder provisions of section 18–1–408(2). *McCormick,* 839 P.2d at 477–78. The court of appeals also remanded the case for further proceedings based on its determination that "the trial court applied the incorrect legal standard in determining whether the defendant breached the plea agreement." *Id.* at 478–79. The court of appeals, however, did not address all of the issues raised by Michael McCormick.

We granted certiorari to address whether the court of appeals erred in finding that the subsequent prosecution of the murder case was barred by section 18–1–408(2) and to determine the appropriate standard to be applied in evaluating whether a defendant has breached a plea agreement. We reverse the judgment of the court of appeals and remand with directions to reinstate the judgments of conviction and sentences entered against Michael McCormick for murder and kidnapping.

7. In denying the motion Judge Wolvington found that:
the Court has to look now at whether in this particular case the prosecutor had knowledge at the time jeopardy attached in the other

## II

The first question presented by this appeal concerns whether the compulsory joinder provisions of section 18–1–408(2) preclude the subsequent prosecution of the murder case. We conclude that the prosecution of the murder case was not barred by section 18–1–408(2) under the unique circumstances of this case, in which there was no prosecutor in the murder case at the time jeopardy attached in the theft case, the opportunity for joinder was limited, and joinder would not have furthered the underlying purposes of section 18–1–408(2).

## A

Section 18–1–408(2) provides:
If the several offenses are known to the district attorney at the time of commencing the prosecution and were committed within his judicial district, all such offenses upon which the district attorney elects to proceed must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode. Any offense not thus joined by separate count cannot thereafter be the basis of a subsequent prosecution.

Section 18–1–408(2) is designed to protect an accused defendant from an oppressive second trial and to preserve judicial and legal resources. *People v. Bossert,* 722 P.2d 998, 1011 (Colo.1986); *Jeffrey v. District Court,* 626 P.2d 631, 637 (Colo.1981).

By its terms, section 18–1–408(2) does not impose any requirement on the prosecution to join different offenses at any point. Instead, by extending the constitutional guarantee against double jeopardy, section 18–1–408(2) establishes the specific circumstances under which a subsequent prosecution may be barred. *Jeffrey,* 626 P.2d at 637. If the prosecution fails to join the charges under such circumstances,

case, and the Court finds from the undisputed evidence of what happened in the case is that there was no prosecutor in this case on August 12, 1986, when jeopardy attached in the other case.

either deliberately or by neglect, section 18–1–408(2) precludes the subsequent prosecution.

We have consistently interpreted the language of section 18–1–408(2) to contain five elements that must be satisfied before a subsequent prosecution is barred: (1) the offenses must have been committed in the same judicial district; (2) there must be a prosecution against the offender; (3) the prosecutor must have had knowledge of the several offenses at the commencement of the prosecution; (4) the offenses must have arisen out of the same criminal episode; and (5) the offender must have been previously subjected to a single prosecution. *People v. Miranda*, 754 P.2d 377, 379 (Colo.1988); *People v. Rogers*, 742 P.2d 912, 916 (Colo.1987); *People v. Taylor*, 732 P.2d 1172, 1176 (Colo.1987); *People v. Deschamp*, 662 P.2d 171, 173 n. 6 (Colo.1983); *Jeffrey*, 626 P.2d at 637.

In this case, only the third element—prosecutorial knowledge of the several offenses at the commencement of the prosecution—is at issue. In *Jeffrey*, we addressed the prosecutorial knowledge requirement of section 18–1–408(2). The question presented in *Jeffrey* was whether the statutory language "known to the district attorney at the time of commencing the prosecution" refers to the stage of the criminal proceeding at which a charging document was filed, or instead, to the stage at which jeopardy attached. *Id.* at 637.

Based on the "overriding purposes" underlying section 18–1–408(2), we refused to read the statutory language expansively in *Jeffrey*. Instead of evaluating prosecutorial knowledge as of the date the charging document was filed, or at any time thereafter, we concluded that the focus should be on prosecutorial knowledge "at the commencement of the jeopardy phase of the criminal prosecution." *Id.*

*Jeffrey* stated:

If, at that point, the district attorney has knowledge of the other offenses that could have been joined in a single prosecution under Crim.P. 8(a), and had sufficient opportunity to add the additional offenses by amendment under Crim.P. 7(e) or to consolidate separately filed cases into a single prosecution under Crim.P. 13, but took no action in that respect, the district attorney cannot thereafter prosecute the accused for other offenses based on the same act or series of acts arising from the same criminal episode.

*Id.* at 638. In subsequent cases, we have continuously reaffirmed *Jeffrey* and held that the "critical point" for assessing prosecutorial knowledge is the day that jeopardy attaches. *E.g.*, *Deschamp*, 662 P.2d at 173; *Corr v. District Court*, 661 P.2d 668, 672 (Colo.1983).[8]

In evaluating the prosecutorial knowledge requirement, the inquiry focuses on the knowledge of the district attorney that brought the prosecution of the later case that is subject to section 18–1–408(2). Section 18–1–408(2) "does not bar a subsequent prosecution where the district attorney has no knowledge and does not participate in the decision to prosecute the different offenses." *Williamsen v. People*, 735 P.2d 176, 181 (Colo.1987).

8. *People v. Robinson*, 774 P.2d 884 (Colo.1989), does not require a different result. In discussing prosecutorial knowledge in that case, we stated that:

the prosecution had knowledge of both cases when the county court case was filed on December 15, 1986; when the district court case was filed approximately one week later; and when it entered into a plea agreement in the county court case on January 22, 1987. However, at no time prior to the defendant's entry of pleas of guilty in the county court case did the People seek to consolidate the two proceedings.

*Id.* at 886.

We refuse to read *Robinson* as imposing a requirement on the prosecution to immediately file a motion for joinder on the existence of the five elements. Such a requirement would be inconsistent with our prior interpretations of section 18–1–408(2). Section 18–1–408(2) was enacted to provide defendants with a shield to protect them against subsequent prosecutions under certain circumstances. Imposing a requirement on the prosecution to file a motion for joinder on the existence of the five elements would transform section 18–1–408(2) into a sword for defendants to use to preclude a subsequent prosecution if the prosecution did not immediately file for joinder.

### B

Under a literal application of these principles to the facts of the case before us, section 18–1–408(2) does not bar the subsequent prosecution of the murder case. Once Judge Wolvington granted Michael McCormick's motion to disqualify the District Attorney's Office for the First Judicial District on August 8, 1986, no prosecutor existed in the murder case. In fact, there was no prosecutor in the murder case until Judge Wolvington appointed Buckley as Special Prosecutor on August 25.

During this period between August 8, 1986, and August 25, 1986, the murder case was therefore in legal limbo. Both the District Attorney's Office for the First Judicial District and Oldham were disqualified from participating in the murder case.

Accordingly, on August 12, the day that jeopardy attached, and the critical point for determining whether a subsequent prosecution was barred by section 18–1–408(2), there was no prosecutor in the murder case. Because no prosecutor existed for the murder case, the prosecutorial knowledge requirement of section 18–1–408(2) necessarily could not be satisfied.[9] Applying our prior case law to the distinctive facts of this case, Judge Wolvington properly denied Michael McCormick's motion to dismiss the murder case because the prosecutorial knowledge requirement of section 18–1–408(2) was not satisfied.

### C

In addition to reaching the proper result based on our prior cases, we are persuaded that Judge Wolvington's conclusion was sound in light of the limited opportunity that existed to join the two cases. On appeal, the State asserts that the District Attorney's Office for the First Judicial District did not have a sufficient opportunity to join the murder case. It is apparent that the opportunity to add the additional offenses or to consolidate the separately filed actions in this case between July 9, 1986, when the District Attorney's Office for the First Judicial District filed the murder case, and July 21, 1986, when it was disqualified from the theft case, was quite limited.

In *Jeffrey*, we indicated that even if the prosecutorial knowledge requirement was satisfied as of the date that jeopardy attached, a subsequent prosecution would not be barred if the district attorney did not have "sufficient opportunity to add the additional offenses by amendment under Crim.P. 7(e) or to consolidate separately filed cases into a single prosecution under Crim.P. 13." *Jeffrey*, 626 P.2d at 638. While we have never addressed the question of what constitutes "sufficient opportunity," the language in *Jeffrey* recognizes that a subsequent prosecution is not barred by section 18–1–408(2) if there was not a sufficient opportunity to join the offenses.

In support of the sufficient opportunity language in *Jeffrey*, we cited the commentary to Standard 13–2.3(c) of the *ABA Standards for Criminal Justice*. The commentary further clarifies that for a subsequently charged offense to be properly barred, the offense must have been ready for prosecution prior to the first trial, in addition to the district attorney having knowledge of the offense:

> The operation of the bar to subsequent prosecutions depends on a flexible time standard. To be properly barred, the subsequently charged offense must have been known to the prosecutor, and must be ready for prosecution, prior to the first trial. A companion offense which became known to the prosecution too late to be jointly prosecuted would not be barred from subsequent prosecution.

II *ABA Standards for Criminal Justice*, Standard 13–2.3(c), commentary at 13.27 (2d ed. 1980).

In this case, the opportunity to join the murder trial was limited. The window of opportunity for the District Attorney's Office for the First Judicial District to seek

---

9. As Judge Wolvington concluded, "[y]ou have to look at the state of mind of the prosecutor at the time of the start of a trial, and at that time there was no prosecutor to have knowledge of the commencement of the previous action."

joinder before it was disqualified from the murder case was only twelve days. Moreover, the theft case was ready for trial and running up against the speedy trial deadline, while a preliminary hearing in the murder case had not even been held. As such, it does not appear that the murder case was sufficiently ready for prosecution to make continuance of the theft trial a viable or reasonable alternative. *See id.*

### D

The policy considerations underlying the compulsory joinder provisions of section 18–1–408(2) reinforce Judge Wolvington's conclusion that the subsequent prosecution of Michael McCormick's murder case was not barred.[10] To conclude that section 18–1–408(2) precluded the subsequent prosecution of the murder case would frustrate the underlying purposes that it was designed to achieve.

Section 18–1–408(2) was intended to protect an accused defendant from an oppressive second trial. *Bossert*, 722 P.2d at 1011; *Jeffrey*, 626 P.2d at 637. The fourteen-count indictment in the theft case did not solely involve charges that arose out of the disappearance of Donoho's truck and trailer. In fact, only five of the fourteen counts in the indictment related to the disappearance of Donoho's truck and trailer. While it may have been possible to join these five counts with the murder case, the remaining counts could not have been similarly joined. *See* Crim.P. 13.

As a practical matter, Michael McCormick faced a total of two trials, regardless of how the charges in the theft case involving Donoho's truck and trailer were allocated. As such, Michael McCormick did not contend before Judge Wolvington, nor could he, that precluding the prosecution of the murder case would further the goal of preventing an oppressive second trial. In this case, the underlying purpose of protecting a defendant from unnecessary se-

quential prosecutions would not be served by joinder.

By providing the circumstances under which a subsequent prosecution would be barred, section 18–1–408(2) also was intended to preserve judicial and legal resources. *Bossert*, 722 P.2d at 1011; *Jeffrey*, 626 P.2d at 637. Penalizing the prosecution for failing to join the five counts related to Donoho's truck and trailer included in the theft case with the murder case at such a late date, would in no way advance the goal of judicial economy. As Judge Polidori found, the theft case was a complex case involving multiple charges and a number of different schemes. Requiring a prosecutor handling the murder case to become familiar with, and later prosecute, the five counts related to the theft of Donoho's truck and trailer at such a late date would have required an unnecessary duplication of many of the efforts already undertaken by Oldham during the past year under his appointment as Special Deputy District Attorney. From the standpoint of judicial economy, it was more appropriate to try the five counts related to the theft of Donoho's truck and trailer in the theft trial.

### E

Section 18–1–408(2) was enacted to provide defendants with a shield to protect against subsequent prosecutions under certain circumstances. Under the unique facts before us on appeal, those circumstances were not present because there was no prosecutor in the murder case on the day that jeopardy attached in the theft case. The opportunity to join the murder case with the theft counts related to the theft of Donoho's truck and trailer was also quite limited. Moreover, barring the subsequent prosecution would frustrate the underlying purposes of the compulsory joinder provisions of section 18–1–408(2). Based on these considerations, we are persuaded that section 18–1–408(2) does not preclude the subsequent prosecution of the

10. Relevant policy considerations standing alone are not sufficient to support the district court's ruling.

murder case.[11]

## III

■ We also granted certiorari to address the appropriate standard to be applied in determining whether a defendant has breached a plea agreement. We hold that the proper standard for evaluating whether the prosecution remains bound by its obligations under a plea agreement is whether a defendant has materially and substantially breached his obligation to perform under the plea agreement. Under this standard, we determine that Judge Polidori properly concluded that Michael McCormick could not enforce the terms and conditions in the plea agreement.

## A

■ Courts that have addressed the validity of plea agreements frequently rely on contract law analogies. *State v. Rivest,* 106 Wis.2d 406, 316 N.W.2d 395, 399 (1982); *see United States v. Britt,* 917 F.2d 353, 359 (8th Cir.1990) (stating that a "plea agreement is contractual in nature and generally governed by ordinary contract principles"), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991); *see generally* Peter Westen & David Westin, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Cal.L.Rev. 471, 530 (1978).

■ A plea agreement, however, is more than merely a contract between two parties, and must be attended by constitutional safeguards to ensure that a defendant receives the performance that he is due.

*Britt,* 917 F.2d at 359 (citing *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971)); *United States v. Ataya,* 864 F.2d 1324, 1329 (7th Cir.1988) (same); *see also Rivest,* 316 N.W.2d at 395 (stating that while the analogies to contract law are important in determining the effects of a plea agreement, they are not solely determinative of the question of the fundamental due process rights that are implicated by a plea agreement).

Accordingly, our previous decisions have recognized that the enforcement of plea agreements requires the application of constitutional due process principles. We have concluded that where a defendant reasonably and detrimentally relies on the prosecution's promises in a plea agreement by performing his side of the bargain, principles of due process require the enforcement of the plea agreement. *People v. Macrander,* 756 P.2d 356, 359 (Colo.1988).[12]

The underlying question presented by the facts of this case is whether a defendant can enforce a plea agreement based on the principles of due process and fairness where he has partially performed a number of obligations in a "full cooperation" plea agreement, but nevertheless has breached some of the obligations in the plea agreement. Numerous courts have addressed the problem of a defendant's partial performance either in the context of a defendant's motion to specifically enforce a plea agreement or in the context of the prosecution's motion to revoke a plea agreement.

11. Because we conclude that section 18–1–408(2) does not bar the subsequent prosecution of the murder case, we do not address the prosecution's contention that a grand jury indictment may not be consolidated with an information.

12. Our prior decisions addressing the enforcement of promises by government officials similarly stress due process principles. In *People v. Romero,* 745 P.2d 1003 (Colo.1987), *cert. denied,* 485 U.S. 990, 108 S.Ct. 1296, 99 L.Ed.2d 506 (1988), we delineated the factors for a court to consider in determining the existence and extent of the right of a defendant to enforce a promise by a government official.

The factors include:
whether a promise was made to the defendant by a governmental official with apparent authority to bind the government, and, if such promise was made, the scope of the promise; whether the defendant reasonably and detrimentally relied on the promise by performing his side of the bargain; and if the defendant reasonably and detrimentally relied on the promise, the appropriate remedy to which the defendant is entitled.
*Id.* at 1010 (emphasis added); *accord People v. Manning,* 672 P.2d 499, 505–09, 512–13 (Colo. 1983); *People v. Fisher,* 657 P.2d 922, 927–31 (Colo.1983).

These cases consistently hold that where a defendant has materially and substantially breached an obligation under a plea agreement, the prosecution is released from its reciprocal obligations. *Ataya*, 864 F.2d at 1330 (court must determine whether there has been a substantial breach); *United States v. Gonzalez–Sanchez*, 825 F.2d 572, 578 (1st Cir.) (failure of defendant to fulfill promise "to cooperate fully and honestly in giving testimony" constituted breach and released prosecution from plea agreement), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *United States v. Reardon*, 787 F.2d 512, 516 (10th Cir.1986) (upholding district court's finding that defendant had breached plea agreement by failing to provide a "full and truthful accounting"); *United States v. Wood*, 780 F.2d 929, 930 (11th Cir.) (finding that defendant breached plea agreement by failing to "fully and truthfully disclose" information), *cert. denied*, 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986); *State v. Hovind*, 431 N.W.2d 366, 369 (Iowa 1988) (finding that prosecution was not bound by plea agreement based on defendant's breach of agreement); *Rivest*, 316 N.W.2d at 399 (Wis.1982) (holding that a plea agreement "may be vacated where a material and substantial breach of the plea agreement has been proved"); *cf. United States v. Baldacchino*, 762 F.2d 170 (1st Cir.1985) (upholding revocation of plea agreement where defendant failed to fully and honestly cooperate with government); *United States v. Donahey*, 529 F.2d 831, 832 (5th Cir.) (defendant's failure to live up to plea agreement released prosecution from its obligations), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976).

■ These courts similarly have concluded that where a plea agreement obligates a defendant to make full and truthful disclosures, partial disclosure by a defendant may constitute a material and substantial breach, such that the prosecution is released from its obligations. *See Ataya*, 864 F.2d at 1336–37; *Wood*, 780 F.2d at 931–32; *see also Gonzalez–Sanchez*, 825 F.2d at 578; *Reardon*, 787 F.2d at 516. The fact that the prosecution may have benefitted from a defendant's partial performance under the plea agreement does not bar the prosecution from moving to vacate the plea agreement based on a material and substantial breach of it. *Britt*, 917 F.2d at 360 (citing *United States v. Brown*, 801 F.2d 352, 354–55 (8th Cir.1986)). Moreover, a defendant cannot avoid the consequences of a material and substantial breach simply by claiming that he substantially performed his obligations under the plea agreement. *Britt*, 917 F.2d at 359–60 (finding substantial performance argument "unpersuasive" because defendant was the breaching party); *Wood*, 780 F.2d at 930 (district court's finding that defendant substantially complied with the plea agreement was clearly erroneous where defendant breached agreement).

We agree with the foregoing approach that examines whether a defendant has materially and substantially breached a plea agreement to determine whether the prosecution is released from its obligations under the plea agreement. Accordingly, we hold that a defendant who materially and substantially breaches a plea agreement cannot enforce the agreement, regardless of whether the defendant has partially performed some of his obligations under it.

### B

■ In this case, Judge Polidori refused to enforce the plea agreement, finding that Michael McCormick breached the agreement by failing to truthfully, faithfully, and fully provide accurate and verifiable information. The court of appeals concluded that Judge Polidori applied an incorrect legal standard in determining whether Michael McCormick breached the plea agreement and suggested that Michael McCormick need only have substantially performed his obligations under the agreement to obtain the benefits of it. *McCormick*, 839 P.2d at 478–79.[13] We disagree

---

**13.** In its discussion of the legal standard to be applied to determine whether Michael McCormick breached the plea agreement, the court of appeals discussed only the singular "trial court."

with the analysis of the court of appeals based on the considerations outlined above, and also determine that in this case Judge Polidori properly concluded that Michael McCormick could not enforce the plea agreement.

The factual determination of whether a defendant breached a plea agreement is a question for a trial court to resolve based on the evidence before it. *Gonzalez–Sanchez*, 825 F.2d at 578. The prosecution bears the burden of establishing a material and substantial breach of the plea agreement. *Ataya*, 864 F.2d at 1337; *Gonzalez–Sanchez*, 825 F.2d at 578. If a trial court's finding of a material and substantial breach is supported by evidence in the record, it will not be overturned on appeal unless the reviewing court is convinced that the finding is clearly erroneous. *Ataya*, 864 F.2d at 1337; *Gonzalez–Sanchez*, 825 F.2d at 578; *Wood*, 780 F.2d at 932.

In her findings of fact on the motion to enforce the plea agreement, Judge Polidori determined that the prosecution had established that Michael McCormick did not meet his obligation to "truthfully, faithfully, and fully provide accurate and verifiable information regarding the Bert Donoho matter." She subsequently concluded that Michael McCormick "breached th[e] agreement" by not truthfully, faithfully, and fully providing accurate information, and therefore, she refused to enforce the agreement.

The determinations that a central component of Michael McCormick's obligation under the plea agreement was to truthfully, faithfully, and fully provide accurate information regarding Donoho's murder and that Michael McCormick breached this obligation, are both amply supported by the record. While Judge Polidori did not specifically state whether Michael McCormick's breach was "material" or "substantial," we are persuaded by the record before us and by the relevant case law that Michael McCormick did in fact materially and substantially breach the plea agreement. *See Ataya*, 864 F.2d at 1336; *Gonzalez–Sanchez*, 825 F.2d at 578; *Reardon*, 787 F.2d at 516; *Wood*, 780 F.2d at 931–32. Accordingly, we conclude that it is not necessary to remand the case for determination of whether Michael McCormick materially and substantially breached his obligations under the plea agreement.

IV

In addressing the issues presented by the consolidated appeal, the court of appeals concluded, *inter alia*, that section 18–1–408(2) precluded subsequent prosecution of the murder case, and that Judge Polidori applied an incorrect legal standard in determining whether Michael McCormick breached the plea agreement. We limited certiorari review to these two issues. We reverse the judgment of the court of appeals and remand the case to the court of appeals with directions to reinstate the judgments of conviction and sentences imposed by the trial court for murder and kidnapping. However, because the court of appeals did not review or rule on many of the issues raised by Michael McCormick, we also remand the case to the court of appeals to consider and determine the issues that were raised but not addressed by the court of appeals and for further proceedings consistent with this opinion.

KIRSHBAUM, J., concurs and specially concurs, and MULLARKEY, J., joins in the concurrence and special concurrence.

**APPENDIX A**

AGREEMENT

This Agreement, by and among the Office of the District Attorney, First Judicial District, State of Colorado and the Office of the Attorney General, State of Colorado,

---

*See McCormick*, 839 P.2d at 478–79. In fact, both Judge Polidori and Judge Wolvington ruled on the enforceability of the plea agreement, and concluded that the plea agreement could not be enforced. Given its earlier reversal of Michael McCormick's murder and kidnapping convictions based on the joinder issue, we construe the court of appeals review to be limited to Judge Polidori's ruling and similarly confine our review.

hereinafter collectively the prosecution or the State, and Michael R. McCormick, hereinafter the Defendant:

WITNESSETH:

### 1. RECITALS

Whereas the Defendant presently has pending against him several counts in Jefferson County; and,

Whereas the Defendant claims to have certain knowledge of several homicides committed in the State of Colorado; and

Whereas, the State is desirous of obtaining said knowledge; and,

Whereas the crimes with which the Defendant presently stands charged are crimes against property and not crimes of violence; and,

Whereas the Defendant has indicated a willingness to cooperate with the State in solving and prosecution of the above homicides in return for certain concessions from the State regarding his pending cases;

NOW THEREFORE, the Parties hereto are agreed as follows, to wit:

### 2. DEFENDANT'S OBLIGATIONS

A. The defendant agrees he will truthfully, faithfully and fully provide accurate and verifiable information regarding the disappearance, kidnapping and homicide of one Bert Donoho occurring on or about August of 1983.

B. The Defendant agrees he will lead agents of the State to the location of the body of the said Bert Donoho and provide information sufficient to enable those agents to recover said body.

C. The Defendant agrees he will truthfully, faithfully and fully provide accurate and verifiable information regarding all other homicides, alleged to have occurred in Colorado, of which he has knowledge. This information is to include, but not be limited to, victim identification, time of the homicide, location of the body, identity of the perpetrator, location of the murder weapon, and manner of killing if such are known to the Defendant.

D. The Defendant agrees he will cooperate fully and freely with the State in the investigation and prosecution of any cases arising out of any information given by him, and will testify fully and truthfully at any judicial proceedings arising therefrom and will aid in the investigation of such cases in such a manner as may be determined from time to time by the investigating officers.

E. The Defendant agrees he will submit to a polygraph examination regarding his personally killing any of the victims of the homicides on which he gives information and also regarding the true identity of the perpetrator(s) of the homicides and the circumstances of any homicides. The defendant must pass (i.e., his answers must unequivocally be classified as truthful) the initial polygraph examination, otherwise all provisions of this entire agreement are void as if no agreement had ever existed.

### 3. THE STATE'S OBLIGATIONS

A. The State agrees that should the Defendant fulfill all of his obligations under Section "2", then the State will not use any of the evidence provided by the Defendant, nor any evidence derived therefrom against the Defendant in any prosecution, except under such circumstances as are more fully described in Section "3", below, i.e., the Defendant will not be charged with or prosecuted for any crime on which he gives information provided he was not the perpetrator of the homicide in question.

(1) The Defendant and the prosecution (the State) specifically agree that even though any statements provided by the Defendant in the course of his cooperation as provided and envisioned in this agreement shall not be used against Michael McCormick in any criminal prosecution, the fact and all evidence of the recovery of any and all homicide victims (including Bert Donoho) shall be admissible in any criminal prosecution against person including the Defendant Michael R. McCormick.

B. The State agrees that should the Defendant fully perform his obligations hereunder, he will serve a period of actual incarceration of approximately two (2) years as a result of any convictions arising out of the indictment presently pending against him in Division Eight (8) of the Jefferson County District Court, to be served concurrently with any other sentence(s) imposed in connection with cases presently pending against him in the State of Colorado.

### 4. AGREEMENT VOID

A. The parties hereto stipulate and agree that any evidence of whatever nature and however developed, except the denial and counterallegations of the person or persons accused by the Defendant, and except for direct or derivative evidence from the Defendant's statements, that the Defendant personally committed the homicide of Bert Donoho or any other verifiable homicide, which evidence shall amount to probable cause as determined judicially or by a Grand Jury, shall render this Agreement null and void *ab initio* and all parties shall be released form all obligations hereunder.

### 5. EXTENT OF AGREEMENT

A. The parties hereto understand and agree that the terms of this agreement extend only to those crimes which are admitted to and discussed by the Defendant.

### 6. ENTIRE AGREEMENT

A. This written agreement contains the entire agreement of the parties hereto and any other agreements, understand-

ings, or negotiations are merged herein.

### 7. AMENDMENT

A. This agreement may not be altered, amended, or modified unless such alteration, amendment [or] modification is reduced to writing and signed by all parties hereto.

### ACKNOWLEDGEMENT

All parties by their signatures below acknowledge that they have read this Agreement in its entirety, fully understand its terms and conditions and are signing it as their own free act and deed. The parties further acknowledge that no threats, promises other than those contained herein, coercion or duress of any nature have caused them to affix their signatures hereto.

WITNESS OUR HANDS AND SEALS this 23rd day of Jan. 1986.

For the State:

/s/ Frank Oldham

Assistant Attorney General

Special Deputy District Attorney

/s/ John E. Byron

Assistant District Attorney

For the Defendant:

/s/ Michael R. McCormick

Justice KIRSHBAUM concurring and specially concurring.

I concur in parts I, III, and IV of the majority opinion. In part II of the opinion, the majority concludes that the prosecution of the defendant, Michael McCormick, for kidnapping and murder after he had been convicted of theft and fraud[1] did not violate the prohibition against multiple prosecutions for offenses arising from the same criminal episode contained in section 18–1–408(2), 8B C.R.S. (1986). I agree with this conclusion, but do so for reasons quite different from those articulated by the majority. I therefore specially concur in part II of the majority opinion.

**1.** The initial prosecution will hereafter be referred to as the "theft case."

The majority concludes that on August 12, 1986, the murder and kidnapping case was in "legal limbo" and that on that date no prosecutor had the requisite knowledge for application of section 18–1–408(2). This rationale ignores the legislative intent of the compulsory joinder statute and significantly undermines prior decisions of this court. However, our cases have established the principle that participation by the same prosecutorial authority in the decisions to initiate separate criminal proceedings against a single defendant is a component of the knowledge requirement of section 18–1–408(2).[2] Because the decision to prosecute McCormick for murder and kidnapping was not made by the same prosecutorial authority that initiated the earlier prosecution for theft and fraud, I conclude that the prosecution of McCormick for murder and kidnapping was not subject to the mandatory joinder provisions of section 18–1–408(2).

Section 18–1–408(2) is designed to protect an offender from the oppression of sequential prosecutions and to conserve judicial and legal resources. *People v. Robinson,* 774 P.2d 884, 886 (Colo.1989); *People v. Bossert,* 722 P.2d 998, 1011 (Colo.1986); *Corr v. District Court,* 661 P.2d 668, 671 (Colo.1983); *Jeffrey v. District Court,* 626 P.2d 631, 637 (Colo.1981). The statute prohibits a district attorney or member of his or her office from prosecuting an offense committed within the judicial district in which the district attorney serves if the following five factors are established: (1) several offenses were committed within the judicial district; (2) a prosecution was initiated against the offenders; (3) prosecutorial knowledge of the several offenses at the commencement of the prosecution; (4) the several offenses arose from the same criminal episode; and (5) the offender was previously subjected to a single prosecution. *People v. Miranda,* 754 P.2d 377, 379 (Colo. 1988); *Corr,* 661 P.2d at 671; *Jeffrey,* 626 P.2d at 637.

McCormick argues that his subsequent murder prosecution is barred under section 18–1–408(2) because all five elements of the *Jeffrey* test, including that of prosecutorial knowledge at the commencement of the prosecution, were adequately met. Evaluation of the knowledge requirement of section 18–1–408(2) focuses on the knowledge of the prosecutorial office initiating a subsequently filed case as of the day jeopardy attaches in a previously filed case. *Robinson,* 774 P.2d at 886; *Jeffrey,* 626 P.2d at 638. When separate criminal proceedings are initiated by separate prosecutorial authorities, a component of the statutory requirement of prosecutorial knowledge is the requirement of prosecutorial participation in the decisions to prosecute. *Williamsen v. People,* 735 P.2d 176, 181 (Colo. 1987); *People v. Talarico,* 192 Colo. 445, 446, 560 P.2d 90, 91 (1977). *See Pinyan v. People,* 190 Colo. 304, 307, 546 P.2d 488, 491 (1976). A review of the decisions articulating this principle illustrates its applicability to the unusual circumstances of this case.

In *Pinyan,* we held that where a defendant had entered a guilty plea to a municipal traffic violation over which only the issuing municipality had jurisdiction to prosecute under the Uniform Traffic Code, sections 42–4–101 to 1513, 17 C.R.S. (1973), subsequent prosecution by the state on a charge of driving without a valid license, under section 42–2–101, 17 C.R.S. (1973), which stemmed from the same traffic stop was not precluded under the mandatory joinder provisions of section 18–1–408(2), 8 C.R.S. (1973).[3] *Pinyan,* 190 Colo. 304, 546 P.2d 488. We noted that two separate offenses violating laws of two different jurisdictions were involved. Each offense must be prosecuted in the jurisdiction where the relevant criminal acts occurred, and neither offense could be tried in a court of the other jurisdiction. *See Davis v. Denver,* 140 Colo. 30, 342 P.2d 674 (1959).

---

**2.** The majority's references to the knowledge of a district attorney rather than the knowledge of a district attorney's office tends to confuse the issue.

**3.** The statutory provision construed in *Pinyan* is identical to § 18–1–408(2).

In *Talarico*, the defendant was arrested for tampering with a coin box. When searched, he was found to be carrying three knives. The defendant was initially charged with both burglary, pursuant to section 18–4–204, 8 C.R.S. (1973), and possession of concealed weapons and unlawful knives, pursuant to City and County of Denver Ordinances, sections 845.1–1 and 845.3. On the same day he was arrested, the defendant entered a guilty plea to the municipal charges.

A few days later, the district attorney filed an information charging Talarico with third-degree burglary, pursuant to section 18–4–204, 8 C.R.S. (1973), and conspiracy, pursuant to section 18–2–201, 8 C.R.S. (1973). The trial court subsequently dismissed these charges, reasoning that section 18–1–408(2) precluded the district attorney's office from filing charges stemming from conduct punishable by the state that also gave rise to the municipal prosecution.

We reversed the trial court's decision, holding that "where there was no knowledge or participation by the district attorney in the decision to prosecute different offenses in both the municipal and state systems, the statute does not apply." *Talarico*, 192 Colo. at 446, 560 P.2d at 91. In so doing, we construed section 18–1–408(2) to allow a subsequent prosecution charging violations of state law for conduct occurring during the course of the same series of events that had given rise to a prior municipal prosecution for other conduct, even though the applicable statute prohibited "substantially the same conduct as that which formed the basis of the municipal conviction...." [4] *Id.* at 447, 560 P.2d at 91.

In *Williamsen*, we again identified participation by a district attorney in the decision to initiate a prior criminal prosecution as a significant factor in determining whether the prosecutorial knowledge requirement of section 18–1–408(2) was established and, therefore, whether the statute prohibited the initiation of a subsequent criminal proceeding for a related offense by that district attorney. *Williamsen*, 735 P.2d at 181. The defendant in *Williamsen* was involved in a collision with another car. He failed a roadside sobriety test, was arrested, and was charged with the criminal offenses of driving while intoxicated [5] and driving with a blood alcohol content of over 0.15 grams of alcohol per 100 milliliters of blood. [6] He was also issued a separate summons and complaint, returnable in the referee's division of the Boulder County Court for violating a red signal light, a class A civil traffic infraction. [7]

Williamsen was acquitted of the traffic offense in December 1983 as the result of a hearing before a county court referee. At his subsequent trial on the charges of DUI and DUI per se that commenced on February 4, 1984, he filed a motion for dismissal of these charges on the ground that because the prosecution had failed to join the traffic charge with the DUI charges, section 18–1–408(2) prohibited the later prosecution. The trial court denied the motion.

In affirming the trial court's denial of this motion, we held that with respect to the statute's prosecutorial knowledge requirement, "[t]he statute does not bar a subsequent prosecution where the district attorney has no knowledge of and does not participate in the decision to prosecute the

---

4. We also recognized that such multiple prosecutions were limited by section 18–1–303(1)(a), 8 C.R.S. (1973), providing "that an acquittal or conviction of municipal charges based on the same conduct will act as a bar to state charges unless:

> The offense for which the defendant was formerly convicted or acquitted requires proof of a fact not required by the offense for which he is subsequently prosecuted and the law defining each of the offenses is intended to

prevent a substantially different harm or evil...."

*Talarico*, 192 Colo. at 447, 560 P.2d at 91 (quoting § 18–1–303(1)(a), 8 C.R.S. (1973)).

5. § 42–4–1202(1)(a), 17 C.R.S. (1984) (DUI).

6. § 42–4–1202(1.5), 17 C.R.S. (1984) (DUI "per se").

7. § 42–4–504, 17 C.R.S. (1984).

different offenses." *Williamsen,* 735 P.2d at 181. We noted that, "[w]hen a summons and complaint charging a traffic infraction are made returnable to a referee, the district attorney is precluded from participating in the proceeding.... Since the district attorney does not participate in the decision to 'prosecute' the traffic infraction, the compulsory joinder statute does not apply." *Id.* at 182 (citation omitted).

*Pinyan, Talarico,* and *Williamsen* establish that the knowledge requirement of section 18–1–408(2) includes a prosecutorial participation component. Our recognition of that requirement furthers the legislative purposes of prohibiting a single prosecuting authority from initiating serial prosecutions arising from particular conduct but permitting the prosecution of different offenses by different prosecuting authorities.

In this case, the prosecutorial authority that filed murder and kidnapping charges against McCormick did not participate in the decision to file the theft case against him. The decision to file the theft case was made by a statewide grand jury convened in the Second Judicial District at the request of the Attorney General of the State of Colorado. § 13–73–101, 6A C.R.S. (1987). The indictment handed down by the grand jury was returned to the Chief Judge of the Second Judicial District, who set venue in the First Judicial District. § 13–73–107, 6A C.R.S. (1993 Supp.). The Office of the District Attorney for the First Judicial District had no authority to decide what charges to file or where to file them in the theft case.

The subsequent murder and kidnapping case, however, was initiated by an information filed in the District Court for the First Judicial District by the Attorney's Office for that judicial district. § 16–5–101, 8A C.R.S. (1986); Crim.P. 7(b). The Office of the District Attorney for the First Judicial District knew of the pendency of the theft case before, at the time of, and for one month subsequent to its decision to file the murder and kidnapping case. However, because that office did not participate in the decision to prosecute the theft case for purposes of section 18–1–408(2), the defendant failed to establish the participation prong of the statute's knowledge requirement.

Because I find section 18–1–408(2) inapplicable in view of the fact that the Office of the District Attorney for the First Judicial District did not participate in the initial decision to file the theft case against McCormick, I need not address the questions of whether, to what extent, and when any particular prosecutor knew of the earlier case. I must note, however, that I disagree with the majority's conclusion that no prosecutor involved in the murder and kidnapping case had sufficient knowledge at the relevant moments in time to request joinder of the two cases.[8]

The majority suggests that section 18–1–408(2) was not applicable after July 21, 1986—the date the Office of the District Attorney for the First Judicial District and special prosecutor Oldham were disqualified from participating in the theft case. Maj. op. at 854. However, for purposes of the statute's knowledge requirement, prosecutorial authority to request joinder of the theft case with the murder and kidnapping

---

8. The majority's contention in section D of its opinion that Crim.P. 13 precluded joinder of the murder and kidnapping charges against McCormick with the charges in the theft case is not supported by the language of the rule. Crim.P. 13 provides as follows:

   Subject to the provisions of Rule 14, the court may order two or more indictments, informations, complaints, or summons and complaints to be tried together if the offenses, and the defendants, if there are more than one, could have been joined in a single indictment, information, complaint, or summons and complaint. The procedure shall be the same as if the prosecution were under such single indictment, information, complaint, or summons and complaint.

   Crim.P. 13. This rule allows joinder of unrelated charges unless a defendant specifically objects under Crim.P. 14 on the grounds of potential prejudice. McCormick made no such objection. Thus, just as it was permissible to try the Donoho theft charges in the same trial as other unrelated theft and fraud counts, so too was it permissible under Crim.P. 13 to try the murder charges against him which arose from the same incident.

case continued in the latter case at least until August 8, 1986—the date the Office of the District Attorney for the First Judicial District was disqualified from participating in the murder and kidnapping case. The purposes of section 18–1–408(2) are best served by a construction that encourages early rather than late prosecutorial elections to request joinder of related criminal proceedings.

The majority states that the knowledge component of section 18–1–408(2) relates only to the knowledge of the particular district attorney that files the later case. Maj. op. at 853, 854. The record does not reveal how charging responsibilities were assigned in the Office of the District Attorney for the First Judicial District in July of 1986, or which attorney or attorneys in that office made the decision to file the second case. More importantly, the statement sub silentio overrules our prior decisions establishing that the knowledge of the entire district attorney's office is to be considered in determining this issue. *People v. Robinson,* 774 P.2d 884, 886 (Colo.1989) (the statutory language is directed at the office of prosecutorial officials); *Corr v. District Court,* 661 P.2d 668, 672–73 (Colo.1983) (knowledge of deputies and assistant district attorneys imputed to the district attorney); *Jeffrey v. District Court,* 626 P.2d 631, 639 (Colo.1981) (knowledge of deputy district attorney imputed to district attorney).

For purposes of assessing the knowledge of the prosecutor of the subsequent proceeding, the critical date is the date jeopardy attaches in the initial prosecution. *Robinson,* 774 P.2d at 886; *Jeffrey,* 626 P.2d at 638. The majority states that on August 12, 1986, when jeopardy attached in the theft case, because no special prosecutor had been appointed to prosecute the murder and kidnapping case, the latter case was in "legal limbo" and "the prosecutorial

requirement of section 18–1–408(2) necessarily could not be satisfied." Maj. op. at 854.

In my view, the murder and kidnapping case was not in any form of limbo for purposes of the statute's mandate. That case was filed on July 9, 1986, by the Office of the District Attorney for the First Judicial District. That office had full knowledge of the pending theft case from July 9 until August 8, 1986, during which time it represented the State of Colorado. The district attorney's election not to request joinder at a relatively early stage of the murder and kidnapping proceedings despite full knowledge of the pendency of the theft case does not, in my view, support the conclusion that the statute is inapplicable.[9] The majority's construction of the knowledge requirement of section 18–1–408(2) encourages late prosecutorial determinations of whether joinder should be sought. Such construction not only frustrates the legislative intent to promote efficient use of legal and judicial resources but also, as here, increases the possibility that speedy trial issues will unnecessarily complicate pending criminal proceedings. While the statute permits such determination to be made as late as the date jeopardy attaches in the first filed case, failure to follow the statute's mandate should not, in my view, be treated as justifiable delay in the circumstances of this case.

For the foregoing reasons, and not those articulated in the majority opinion, I specially concur in the result reached in part II of that opinion.

I am authorized to say that Justice MULLARKEY joins me in this concurrence and special concurrence.

---

9. That the issue of joinder was known to all attorneys is well illustrated by the following statement made on July 18, 1986, by special prosecutor Oldham to the trial court at a motions hearing in the theft case:

    [T]here are a significant number of issues involved in this case because there's another

filing in another division in this jurisdiction and it brings up issues of joinder because of the charge there and because of some of the charges in this indictment. Those are issues that may have to be faced by this court.... Record, Vol. II at 14.